FILED
2008 Aug-18  PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KYLE EDWARDS,** | ) | |
| **DIANE GEORDE,** | ) | |
| **RYAN CADE,** | ) | |
| **KAMERON BATTLES,** | ) | |
| **KELLY KEY,** | ) | |
| **individually, collectively** | ) | |
| **and on behalf of a class of** | ) | |
| **similarly-situated employees,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | |
| | ) | **2-08-CV-01016-WMA** |
| **PRIME INC., *d/b/a* RUTH'S CHRIS** | ) | |
| **STEAK HOUSE, and RUTH'S CHRIS** | ) | |
| **STEAK HOUSE, INC., themselves and** | ) | |
| **on behalf of a class of defendants that** | ) | |
| **operate restaurants named** | ) | |
| **"Ruth's Chris Steak House," and** | ) | |
| **MARKHAM OSWALD and another** | ) | |
| **individual who is known as Jesus Molina** | ) | |
| **(which or may not be his real name),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS IN PART AND/OR MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.     INTRODUCTION

Plaintiffs' counsel grins at Defendants' characterization of the complaint as

a " 'kitchen sink' approach to pleading" (Defs. Mem. at 2), because Plaintiffs'

counsel, who has seen and represented his share of employers, has never seen a place of employment where almost everything needs a good scrubbing in a sizable sink with a industrial drain.

Yes, many claims are alleged.  What started out as a case of wholesale FLSA violations and employment of illegal aliens, things got dirtier the more that one looked under the sink.  Surely Defendants do not seriously suggest Plaintiffs' counsel should have not pled additional claims based on evidence that African-American Plaintiffs/employees have been called "black bitch" and "nigger" in their workplace at the Ruth's Chris restaurant here in Birmingham.

There are more plaintiffs to come, as well as additional claims to come from current Plaintiffs, for example two of whom have had their health insurance cut off, and another has suffered a reduction of work shifts, all after this lawsuit was filed.  The claims in the Complaint are not all as Defendants' unlawful conduct continues to mount as this case continues. Out-of-control employers, who ignore and act as if they are above the law, cannot be heard to complain about, indeed they should expect, every claim that can be mustered against them.

It is not surprising Defendants' try to steer the Court to the "red herring' of service charges, which are not an issue.  The "house" can do whatever it wants to do with "service charges; but it cannot lawfully break the backs of $2.13 per hour servers by stealing their tips.

## II.    STANDARD OF REVIEW

The Defendants overlook that there is more to the standard of review at the Rule 12(b)(6) stage than what Defendants' call the Supreme Court's "freshly articulated" standard defendants quote. (Defs'. Mem. at 7).

Last year in <u>Tellabs, Inc. V. Makor Issues & Rights, Ltd</u>., 127 S. Ct. 2499 (2007), the Court addressed the standards applicable to a Rule 12 (b)(6) motion, in the context of the more heightened and exacting pleadings requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA).

In that context of that statute, which explicitly imposes more strenuous pleadings requirements, the Supreme Court stated in <u>Tellabs, Inc</u>.:

> We establish the following prescriptions: *First*, faced with a Rule 12(b)(6) motion to dismiss a §10(b) [securities fraud] action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true….
>
> *Second*, courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.  The inquiry, as several Courts of Appeals have recognized, is whether *all* of the facts alleged, taken collectively,…, not whether any individual allegation, scrutinized in isolation, meets that standard.

<u>Id.</u> at 2509 (citations omitted).

The Court went on to state:

> Congress, as creator of federal statutory claims, has power to prescribe what must be pleaded to state the claim, just as it has power to determine what must be proved to prevail on the merits. It is the

federal lawmaker's prerogative, therefore, to allow, disallow, or shape the contours of—including the pleading and proof requirements for—§10(b) [securities] private actions. No decision of this Court questions that authority in general, or suggests, in particular, that the Seventh Amendment inhibits Congress from establishing whatever pleading requirements it finds appropriate for federal statutory claims.

Id. at 2512.

Here, there is no PSLRA-like, legislatively prescribed heightened or more strenuous pleading requirement applicable to any of the claims alleged in the Complaint.  Plaintiffs submit the allegations in their complaint, taken as a whole, and/or in particular factual detail impermissibly scrutinized in isolation, provide the grounds that entitle Paintiffs to relief, as shown below.

As the Supreme Court even more recently ruled, RICO does not require elements of **proof** that are not set forth in the statute.  See Bridge v. Pheonix Bond & Iindem.Co., ___ U. S. __, 128 S. Ct. 2131 (June 9, 2008) (First-party reliance is not an element of a RICO claim based on mail fraud predicate statutes).

Nothing has changed the principles that for Rule 12(b)(6) purposes, as the Eleventh Circuit has consistently held:

> [a] complaint should not be dismissed pursuant to Rule 12(b)(6) "unless it appears **beyond doubt** that the plaintiff can prove **no** set of facts in support of his claim."

Williams, 465 F.3d at 1282 n.2; quoting Beck v. Deloitte & Touche, 144 F.3d 732, 735 (11th Cir.1998) (emphasis added).

Defendants have it backwards when they assert things like "plaintiffs have failed to set forth sufficient factual allegations that, if true would establish that these defendants committed a violation of RICO."(Defs'. Mem. at 8).  Plaintiffs have no obligation to plead every fact that supports their claims, but defendants often use 12 (b)(6) motions to try to get disclosures of Plaintiffs evidence, which is a process best left for discovery under other Rules, not by impermissibly imposing a heightened pleading standard.  To the contrary, it is Defendants' obligation to show that there are no facts that can support Plaintiffs claims, an obligation that defendants do not meet or even try to meet.[1]

## III.   ARGUMENT

## A.    RICO

Regarding their Rule 12 (b)(6) motion as to the RICO claims, Defendants repeatedly confuse requirements of proof and incorrectly represent them as requirements of pleading.  Page 8 of Defendants' memorandum contains two unmistakable examples of defendants' confusion about proof v. pleading requirements.  There Defendants' incorrectly state:  "They [plaintiffs] must also allege (1) the requisite injury to business or property, and (2) that such injury was

---

[1] Defendants' try to play both sides.  On the one hand they chide "parrot[ing] the elements of a claim" (Defs. Mem at 7) yet throughout the Rule 12(b)(6) portion of their Memorandum Defendants consistently contend Plaintiffs must plead every element of proof necessary to prove their claims. Plaintiffs legitimately ask: which is it going to be?  And Plaintiffs legitimately contend: Defendants cannot have it both ways, which imposes an intolerably complex and amorphous burden on the system of simple notice pleadings on which the Federal Rules are based.

by reason of the substantive RICO violation," for which Defendants cite <u>Williams</u>

<u>v. Mohawk Indus.</u>, 465 F.3d 1277, 1282-83 (11th Cir. 2006).  If one looks at the

quote as it actually appears in <u>Mohawk</u>, the 11th Circuit **did not** say (1) and (2)

quoted above must be **alleged**.  What the Eleventh Circuit actually said was

> Thus, under§ 1964(c), civil RICO claimants, such as the plaintiffs here, must
> **show** (1) the requisite injury to business or property, and (2) that such injury
> was by reason of the substantive RICO violation.

<u>Id.</u> (emphasis by Plaintiffs).  It seems rather obvious: "show" means "prove," not

"allege" as Defendants would have this Court believe.  The point is that what the

11th Circuit actually described was a requirement of proof, not of pleading as

Defendants confusingly would have this Court erroneously believe.

Defendants do it again on the bottom of the same page (8) of their

Memorandum, where Defendants' confusion is even more obvious on the very face

of their argument:

> To **plead** a civil RICO claim under § 1962(c), a plaintiff must "satisfy four
> elements of **proof**: (1) conduct (2) of an enterprise (3) through a pattern (4)
> of racketeering activity,"

quoting <u>Jones v. Childers</u>, 18 F.3d 899, 910 (11th Cir. 1994) (emphasis by Plaintiffs

to show Defendants' confusing proof requirements with pleading requirements).  If

one looks at the quote as it actually appears in <u>Jones</u>, the 11th Circuit **did not** say

the four elements of **proof** must be **plead**.  In <u>Jones</u>, what the 11th Cir. actually

said:

> In <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court held that a plaintiff seeking treble damages under § 1962(c) of the federal RICO statute must **satisfy four elements of proof**: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

<u>Jones</u>, 18 F.3d 8999, 910 (emphasis by Plaintiffs).

Plaintiffs point remains that what the 11th Circuit actually described was a requirement of proof, not pleading as Defendants confusingly would have this Court erroneously believe.

Defendants' arguments are loaded with such confusion, which Plaintiffs respectfully submit is erroneous as a matter of law.

Regardless, the Plaintiffs unmistakably pled all of the proof requirements that Defendants argue are requirements of pleading (even though they are not).

Paragraph 47 of the Complaint alleges that "Plaintiffs and members of the plaintiff RICO class have suffered direct injury to their business proximately caused by the substantive RICO violations" of Defendants.  Paragraph 48 of the Complaint goes further and alleges plaintiff and members of the Plaintiff RICO class suffered the injury of deprivation of "business relations unhampered by schemes prohibited by the RICO predicate statutes," which in <u>Mohawk</u> the Eleventh Circuit acknowledged, and noted similar acknowledgement by the Supreme Court, as a cognizable injury under RICO.  465 F.3d at 1289.

Defendants simply ignore those paragraphs and pretend they are not in the Complaint, wasting the time of all with their specious argument that proof requirements are pleading requirements, despite that the elements of proof were pled.

The complaint similarly, unmistakably alleges the "four elements of proof" Defendants would have the Court to erroneously require as elements of pleading. In their memorandum Defendants do not argue about the adequacy of the Complaint as to the first three of the "four elements of proof," nor could they do so with any sense of seriousness.  Instead Defendants focus on the fourth element of proof – their "racketeering activity" – but the starting point for their arguments again begins with their confusion of proof with pleading requirements.

On page 9 of their Memorandum, Defendants start with such arguments that "A pattern of racketeering activity 'is **proved** ….'" (emphasis by Plaintiffs); and "liability 'depends on a **showing** ….'" (emphasis by Plaintiffs).

Unfortunately for defendants, they focus their reading of the RICO – COUNT I – on paragraph 39 subparagraphs a, b, c, and d, which defendants erroneously describe "as close as the Complaint comes to alleging a RICO predicate act." (Defs. Mem. at 10).  Not so. Analysis of paragraphs 40 and especially 42 of the Complaint, reveals that what was pled was every element of proof of racketeering activity that Defendants erroneously claim to be a pleading

8

requirement:  hiring and employing illegal aliens, even **knowingly** allowing them to use names and Social Securities numbers of Americans, even of Prime's former American employees (Complaint ¶ 42).  Obvious inferences are that such conduct helped conceal the fact that illegal aliens were working there, shielding them from detection and harboring them in their place of illegal employment, and encouraging through their illegal employment to reside here, in one sense helping illegal aliens to "hide in plain sight." The brazen nature of the scheme in violation of RICO's predicate statute, 8 U.S.C. § 1324[2], is not rendered lawful by its very brazen nature.

Defendants cite no case to the contrary.  In terms of destroying documents, ¶ of the complaint alleges that defendant Prime trashed at least one "no-match" letter.

As indicated by the allegations in ¶ 46 of the Complaint, Defendant Prime had some sort of a pipeline or a source of illegal aliens via which it quickly secured their employment – whether the aliens brought themselves here by making a mad dash across the border in the middle of the night or whether Defendants went down to the border and picked them up or whether they just gravitated to Prime's employment because they knew they were welcomed and could get away with

---

[2] "The Immigration and Nationality Act and such Act, referred to in [18 U.S.C. § 1961] par. (1)(F), is Act June 27, 1952, c. 477, 66 Stat. 163, as amended, which is classified principally to chapter 12 (section 1101 et seq.) of Title 8, Aliens and Nationality. Sections 274, 277 and 278 of such Act are classified to **sections 1324**, 1327 and 1328 **of Title 8**, respectively."  18 U.S.C.A. § 1961 at "References in Text." (emphasis added).

employment at the Ruth's Chris restaurant, remains to be seen. Those matters are matters of proof, not pleadings. One thing is for sure -- if they are illegal aliens, *a fortiori*, someone brought them here even if it was themselves. How Prime's illegal aliens got into this Country is not the cornerstone under RICO's predicate statute, 8 U.S.C. § 1324.

Regarding RICO COUNT I, Defendants have not established beyond doubt that there are no set of reasonably conceivable facts that would prove RICO violations. Indeed, in their own Memorandum Defendants have described facts, even they must concede, that would prove RICO violations, which necessarily defeats their motion to dismiss. Defendants' attempts to elevate some required elements of proof to elements of pleading violates the prohibition on any heightened standard of pleading that does not exist in the RICO statute. In fact, the Eleventh Circuit in <u>Mohawk Industries</u>, considered similar allegations in Williams' complaint and concluded "the plaintiffs have properly alleged a 'pattern of racketeering activity.' " <u>Williams v. Mohawk Industries, Inc.</u>, 465 F.3d at 1283.

## B.    FLSA COLLECTIVE ACTION REGARDING OTHE FRANCHISEES OF DEFENDANT RUTH'S CHRIS

Plaintiffs concede they have not pled and cannot plead that other franchisees are the named-Plaintiffs' employer, but they have alleged that Defendant Ruth's Chris focuses "on providing operational guidance to its franchisees, including sharing of 'best practices' from company-owned Ruth's Chris restaurants"

(Complaint ¶ 35) and that "Regional vice presidents of Defendant Ruth's Chris have 'oversight responsibility for franchise-owned restaurants in his or her own region.' " (Complaint ¶ 36). Those allegations do not exclude factual scenarios in which Ruth's Chris acts directly or indirectly in the interest of Prime and other franchisees in relation to their employees. One reasonable inference from the allegations is that Ruth's Chris does so, as alleged in ¶ 67 of the Complaint, making Ruth's Chris an employer of Plaintiffs and similarly situated employees of other franchisees in terms of establishing wage and hour policies and practices that violate the FLSA. For purposes of Rule 12(b)(6), Defendant have not demonstrated beyond doubt that no facts exist that support Plaintiffs' claims.

If Ruth's Chris is an FLSA employer of employees of franchisees, the very nature of a collective action is to allow similarly-situated employees of an FLSA employer to collectively pursue their claims against the employer. That would include employees of other franchisees for which Ruth's Chris acts directly or indirectly in relation to their employees. All should be allowed to use the collective action provisions of the FLSA. The collective nature of an FLSA action is the vehicle by which employees of other franchisees should be included in this case.

11

Moreover, defendants' Memorandum ignores the allegation about an FLSA defendant class, including "franchisees of Defendant Ruth's Chris that operates restaurants named 'Ruth's Chris Steak House.'" (Complaint ¶ 68; and ¶¶ 85 b, 88).

Finally, the arguments of Ruth's Chris that it has nothing to do with employment matters involving its franchisees, including Defendant Prime, is belied by one glaring fact of record here – counsel for Ruth's Chris is defending its franchisee Defendant Prime's employment policies, practices, decision and actions alleged unlawful by Plaintiffs here.  That alone supports an inference for Rule 12 (b)(6) purposes that Ruth's Chris acts directly or indirectly on behalf of Prime with regarding Prime's employees and those of Defendant class of franchisees.

## C.   INTENTIONAL INTERFERENCE WITHN BUSINESS AND CONTRACTUAL RELATIONS AND FOR CONVERSION

On the one hand, Defendants would have this Court believe that Defendants are not completely aware that these tort claims refer to interfering with and converting tips customers give to Plaintiffs for Defendants' profit (in Defendants' words on the one hand "[t]hese counts are hopelessly unspecific," [Defs. Mem. at 20]), yet on the other hand, Defendants argue for FLSA preemption on their assumption that both tort claims "recast their FLSA [tip] claims as state-law tort claims." (Defs. Mem. at 24).

Plaimtiffs respectfully submit that any fair reading of the complaint as a whole makes it obvious that the intentional interference claim refers to Defendants'

seizing tips customers give to servers and contacting customers and getting or trying to get customers to rescind all or part of an exceptional tip, and that the conversion claim refers to Defendants stealing plaintiffs tips.

It is worth noting that Defendants did not file a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e), as one would expect if Defendants seriously thought that the tort counts were "so vague or ambiguous" they could not respond to them.

Regardless, such matters should be addressed by a more definite statement pursuant to Rule 12(e) or an amended complaint as discussed below, not by dismissal at this earliest stage, indeed the very beginning, of this litigation.

Defendants' "on-the-other-hand" argument for FLSA preemption should also be rejected.  Defendants do not point to any specific preemption language in the FLSA itself, such as the now-notorious preemption provision in ERISA, 29 U.S.C. 1144(a), but instead Defendants appear to base their preemption on an argument that the FLSA has "super-preemptive" effect and so completely occupies the field that state laws are ineffective and not operative..  The cases cited by defendants do not so hold.  Otherwise, the wage and hour laws that many, many states have adopted would be all for naught; no court has so held.

It is one thing to say that the FLSA is the exclusive remedy for enforcing rights created under the FLSA.  It is an entirely different thing to say that the FLSA

is the exclusive remedy for enforcing anything and preempts rights created under State law (including the rights to be free from intentional interference and conversion). Defendants' cases do not support the latter proposition. Most of Defendants' cases are notable only for their superficial treatment and lack of any substantial analysis of preemption issues, which could fill a chapter in a book of law. Neither Defendants' cases, nor Defendants, address any of the many decisions of the U.S. Supreme Court analyzing federal preemption issues in a variety of contexts in the last few years. Plaintiffs decline to respond to matters not addressed by Defendants or their cases.

Under the Defendants' approach, if a customer gives a server a cash tip and the server sticks it in his or her pocket, Defendants could stick their greedy fingers into the server's pocket, pull out the cash and keep it for themselves without incurring liability under State law. Nonsense, but it is the obvious and obviously nonsensical result of Defendants' preemption argument. As in the foregoing example, Plaintiffs state-law tort claims here do not depend on whether the FLSA was violated. If a customer gives a Plaintiff a tip, it is the plaintiff's tip under Alabama law, it does not belong to the defendants (to whom the customer did not give the tip), regardless of the FLSA. That the FLSA also gives the Plaintiffs the rights to their tips hardly negates Plaintiffs' state-law rights to their tip that the customer paid him or her. Neither Defendants, nor their cases, contend otherwise.

14

The Department of Labor's regulation regarding the FLSA's "Relation to other laws" contravenes the "super-preemptive" effect of the FLSA apparently urged by Defendants, see 29 C.F.R. § 531.26, and the 11th Circuit decisions do not favor FLSA preemption of state laws that give rights "more generous than the FLSA demands." Freeman v. City of Mobile, 146 F. 3d 1292, 1298 (11th Cir. 1998); Avery v. City of Talladega, 24 F.3d 1337, 1347-48, 1349 (11th Cir. 1994) (FLSA-preemption dismissal of state law claim reversed).

Nothing compels or warrants this Court to make the FLSA a preemption monster like ERISA has become, and Plaintiffs respectfully suggest that this Court should not do so and should reject Defendants' preemption argument.

## D.    SECTION 1981 CLAIMS

Plaintiffs do not take issue with Defendants' arguments that claims of solely "national origin" or gender discrimination are not encompassed within 42 USC §1981. But Defendants' arguments do not warrant dismissal of the claims of Plaintiffs George, Battles or Edwards of discrimination under § 1981, because each of them specifically alleged discrimination on the basis of their race in violation of § 1981. (Complaint ¶ 98 -- Dianne George; ¶ 102 -- Cameron Battles; and ¶ 104 -- Kyle Edwards). Defendants acknowledge that "[s]ection 1981 prohibits … discrimination based on a person's race." Defs. Mem. at 24.

15

Plaintiff further submits that Plaintiff George's "race-plus" claim of discrimination is a claim of racial discrimination.  She was called a "black bitch," which is a racial epithet directed to her as an African-American female.

As to Plaintiff Cameron Battles' §1981 claim for racial discrimination, Defendants again confuse what Battles "must **show**," "to **establish**" his claim (Defs. Mem. at 27) including that he suffered an adverse employment action (id. at 28) (emphasis by Plaintiffs) with what he must **plead** as a claim.   Defendants have again erroneously confused elements of proof with minimal notice requirements of pleading.  There is no legal requirement that Plaintiff Battle must plead everything he must show to establish unlawful discrimination. Defendants argument attempts to impermissibly impose a heightened pleading standard on claims of race discrimination under §1981.

Regardless, in their Memorandum, Defendants overlook Plaintiff Battles' allegation that "Defendant Prime discriminated against [him] by failing and refusing to assign him to positions as a server and to give him shifts as a server and by first giving positions and shifts to employees who were not African-American and who were hired while Battles was already employed and whom Battles had helped train for the positions and shifts at issue, despite the fact that Battles had been previously trained and certified for the positions and to work those shifts." (Complaint ¶ 102).  While Plaintiff Battles did not have to plead "an adverse

16

employment action," he did so in paragraph 102 of the Complaint.  That Battles was ultimately allowed an opportunity to work some shifts as a server, hardly negates his claim of discrimination based on earlier denials of that opportunity, which was given to white employees hired after Battles and who Battles helped train.  Defendants' Rule 12(b)(6) arguments about Battles' § 1981 claim are a waist of the time of all.

Defendants' argument about all § 1981 claims warrant no further comment.

### E.     PLAINTIFF EDWARDS ASSAULT CLAIM
### AGAINST DEFENDANT PRIME

Yet again, Defendants confuse what "the plaintiff must offer as evidence" (Defs. Mem. at 30, quoting Joyner v. AAA Cooper Transp.) with what must be pled to meet minimal notice pleading requirement.  Defendants' discussion of facts needed to support the claim, itself, demonstrate the existence of facts that can support the assault claim against Defendant Prime.  Under the applicable standard of review, that defeats the Rule 12 (b)(6) motion as to this claim.

The Alabama Supreme Court has held that:

"[T]he exclusive remedy provisions were not designed to shield an employer ... from the entire field of tort law," and "intentional tortious conduct ... committed beyond the bounds of the employer's proper role is actionable."

Ex parte Progress Rail Services Corp., 869 So.2d 459, 470 (Ala. 2003); quoting

Lowman v. Piedmont Executive Shirt Mfg. Co., 547 So.2d 90, 92, 95 (Ala. 1989).

The Court of Civil Appeals has held that "[a]n assault that is based solely upon

personal ill will, hatred, or anger does not arise out of and in the course of the employment." Beverly v. Ruth's Chris Steak House, 682 So.2d 1360, 1362 (Ala. Civ. App. 1996) citing Thompson v. Anserall, Inc., 522 So.2d 284 (Ala. Civ. App. 1988).  The Court of Civil Appeals further stated

> the fact of a willful assault alone does not conclusively establish that the assault arose out of the course of the employee's employment. That conclusion must be drawn from the circumstances of the case.

Ruth's Chris, 682 So. 2d at 1362; citing McGaughy v. Allied Products Co., 412 So.2d 803 (Ala.Civ.App.1982).

In effect, whether or not a cause of action for intentional torts is preempted by the Worker's Compensation Act is a question to be determined by the "circumstances of the case."  At the 12(b)(6) stage, the facts are to be viewed in a light most favorable to the Plaintiff.  Because the Worker's compensation Act is not necessarily the exclusive remedy for an employee in the case of an intentional tort, dismissal at the 12(b)(6) stage is not appropriate.

Additionally, the Alabama Legislature has specifically recognized that in some instances, injuries to employees will fall outside the ambit of the Worker's Compensation Act, in enacting Ala. Code § 25-6-1.  Defendants' suggestion that all claims by employees against an employer are relegated to the Worker Compensation Act's remedies ignore and run afoul of this statute.

18

## E.    NEGLIGENT AND WANTON SUPERVISION AND RETENTION

Additionally, to the extent Plaintiffs' claims for negligent and wanton supervision and retention are based on Federal claims of discrimination, harassment and/or the intentional torts of its employees or managers, and the Worker's compensation Act is not necessarily the exclusive remedy, as addressed above.    Thus, dismissal of these claims at the 12(b)(6) state is similarly inappropriate.

## E.    AMENDING v. DISMISSAL

There is no need for Plaintiffs to amend their complaint to state their claims differently, because Plaintiffs have already pled claims upon which relief can be granted.  Defendants' erroneous contention otherwise, even if correct, would not warrant dismissal.

Defendants suggest <u>Davis v. Coca-cola Bottling Co. Consol</u>, 516 F. 3d 955, 974 (11th Cir. 2008) supports dismissal under Rule 12(b)(6).  <u>Davis</u>, however is easily distinguishable because there, the dismissal came after a second amended complaint and considerable discovery.  Pertinent instructions from the Eleventh Circuit are stated in <u>Williams v. Board of Regents</u>, 477 F.3d 1282 (11th Cir. 2007):

> "If the case has more than one defendant, and not all have filed responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer."

<u>Id.</u> at 1291.

19

Here, the parties have not even had their Rule 26 planning meeting or submitted a proposed scheduling order to this Court.  No defendant has filed an answer, and there has been no discovery.  This case is at its earliest stage.  There is no reason to not allow an amendment to cure any perceived deficiencies in the Complaint. In <u>Davis</u>, the case on which Defendants so heavily rely, is so inapposite, distinguishable and inapplicable, it warrants no further comment.

The Eleventh Circuit has consistently held:

> [a] complaint should not be dismissed pursuant to Rule 12(b)(6) "unless it appears **beyond doubt** that the plaintiff can prove **no** set of facts in support of his claim."

<u>Williams</u>, 465 F.3d at 1282 n.2; <u>quoting</u> <u>Beck v. Deloitte & Touche</u>, 144 F.3d 732, 735 (11th Cir.1998) (emphasis added).  If this Court should somehow determine Defendants' Rule 12(b)(6) motion meets that standard (which it does not) and Plaintiff's allegations do not support claims upon which relief may be granted (which they do), Plaintiff would ask this Court for an opportunity to amend and an opportunity to undertake discovery especially in light of Counsel's Rule 59(f) declaration (Plaintiff's Evidentiary submission Ex. 4)

## III.    Response to Defendant's Motion for Partial Summary Judgment

### A.    Disputed Facts

Defendants' evidentiary submissions is more telling by what it is completely missing – any denial that any Defendant was not aware of employment of illegal

aliens in violation of RICO's predicate statute.   Thus, given the absence of any evidence (or argument) from the movants on that factual issue, Plaintiffs has no obligation to submit anything in response to the Motion as to that missing point. Instead, Movants have claimed that as a matter of fact, that they have nothing to do with each other's employment or employees.

Plaintiffs' evidentiary submission creates disputes of facts on that issue. Kyle Edwards explains that notwithstanding Defendants factual claim that Ruth's Chris has nothing to do with Prime's hiring, Ruth's Chris web-site allows the user to search for positions open at Prime's Ruth's Chris restaurant in Birmingham and even provides a means to submit an application on-line at Ruth's Chris web-site for such positions with Prime.  (Plaintiffs' Evidentiary Submission Ex. 2 ¶ 10).  Ruth's Chris purported "hands-off" approach to employment with Prime is further belied by the reservation by Ruth's Chris of the right to require Prime to maintain reasonable standards in its work staff" and "to dismiss ["any employee"] from its work staff for cause." (Defendants' Declaration of Kevin Armantrout ¶ 13 Exh 1 on p. 7 at section 5.04); the question of whether "Tish Morris," the person who signed that "informal" name over the title of "HR Director Ruth's Chris Steak House (Plaintiffs' Evid. Sub. Exh. 3) is the same person as Defendant's declarant who signed her formal name of "Patricia Morris" to her declaration declaring she is the "Human Resources Manager for Prime." (Morris Dec. ¶ 1).  The signatures on

the letter and the declaration are not identical, but they share tell-tale remarkable similarities in the letters "Mo" in "Morris."   There is at least of an inference that things are not what Defendants would have them to seem.

Along the same line, in their Memorandum, in n. 9 on p. 13, Defendants' question the very existence of a Ruth's Chris employee handbook used in employment at Prime, but lo and behold, there it is attached as Exhibit D to Plaintiff's Edwards declaration. (Plaintiffs' Evidentiary Submission Ex. 2 ¶ 2 and Ex. D).   On its face it was a handbook of Ruth's Chris and somehow (perhaps magically) was put into use in employment with Defendant Prime.  Again things are not what Defendants would have them seem as to their asserted complete separation of employment matters at Ruth's Chris and Prime.   Defendants effectively ask this Court to put its common sense aside and not reasonably infer the connections between Ruth's Chris and, its involvement with, employment at Prime, which, at a minimum, give rise to genuine issues of material facts as to that factual dispute.

If that somehow is not enough, one can add Ruth's Chris admitted "general operational oversight and sharing of best practices with franchisees," (Declaration of Kevin Armantrout ¶ 5), which Ruth's Chris proclaimed in one of its more recent annual reports. (Plaintiffs' Evid. Submiss. Ex. 1).  A reasonable inference from the proclamation in the report, which does not contain any exception regarding

employment matters, is the inference that "oversight responsibility" applies to employment matters, especially in light of the fact that Ruth's Chris reserved the right to set "Employee Standards" in its franchise agreement with Prime.

Plaintiffs respectfully submit that there are genuine issues of material facts and inferences reasonably drawn therefrom against the movants that should defeat Defendants' Motion for Partial Summary Judgment.

As to tips, of which Defendants claim the house took none, and Plaintiff Edwards Declaration is unequivocally to the contrary -- that the house took gratuities and that Defendant Oswald said it did. (Plaintiffs' Evid. Submiss. Ex. 2, ¶¶ 3-4). There cannot be a more clear dispute of fact as to the FLSA claims, which defeats Defendants' motion as to those claims.

## B.     Defendants' Motion also fails as a Matter of Law

### 1.     RICO

Defendants' try to erroneously limit the legal scope of enterprises covered by RICO by arguing that it would be "'absurdly remote' from the intended purposes of RICO" to apply it to Defendants' franchise system (Plaintiffs do not read Defendants' Memorandum to make that argue as to the enterprise that is the franchisor-franchisee relationship between only Defendant Ruth's Chris and Prime. The difference is one only of degree, not kind, and Defendants' argument unduly

restricts the scope of RICO's statutory definition of "enterprise," and is contrary to the law in this Circuit:

> Substantial legal precedent permits a wide range of legitimate enterprises to be named as the vehicle through which racketeering acts are committed. See United States v. Turkette, 452 U.S. 576, 580, 587, 101 S.Ct. 2524, 2527, 2530, 69 L.Ed.2d 246 (1981); United States v. Zielie, 734 F.2d 1447, 1463 (11th Cir.1984), cert. denied, 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964, and cert. denied, 469 U.S. 1216, 105 S.Ct. 1192, 84 L.Ed.2d 338 (1985). A variety of entities can be enterprises, including benevolent and nonprofit organizations such as unions and benefit funds, governmental units, courts and judicial offices, police departments, and motorcycle clubs to name a few.

U.S. v. Beasley, 72 F.3d 1518, 1525 (11th Cir. 1996).  The Supreme Court has expressly rejected a narrow reading of "enterprise" based on "distress" about the purportedly "extraordinary," even "outrageous" uses to which civil RICO has been put."  Sedima, S. R. L. v. Imrex Co., 473 U.S. 499 (1985). Such distress sounds remarkably like Defendants' "absurdly remote" argument.

Regarding Defendants arguments about "a RICO person," per its franchise agreement with Defendant Prime, Defendant Ruth's Chris makes money from its participation in the enterprise just as do Defendants Prime and Oswald, who have not offered any evidence disclaiming knowingly violating Rico's predicate statute. 8 U.S.C. § 1324.  Williams v. Mohawk Industries, Inc., 465 F.3d 1277 (11th Cir. 2006).  Liability attaches to participation in the "enterprise."

## 2.     FLSA CLAIMS

Factually, 'tips"/"gratuities" are distinct from "service charges," and the law recognizes the differences between the two.  29 C.F.R. § 531.52 ("tips belong to the person in recognition of whose services it is presented by the customer"); whereas a service charge belongs to the employer that charges it.  29 C.F.R. § 531.55.  Service charges are a classic red-herring and a non-issue.  The FLSA legal dispute is over the unlawful taking of tips/gratuities.  Defendants cannot hide behind slick "nomenclature," calling a tip/gratuity a service charge, when it is not as matters of fact and law, both of which warrants denial of Defendants' motion for partial summary judgment on the FLSA claims.

## IV.    CONCLUSION

If the law or Plaintiffs' Evidentiary Submission do not defeat Defendants' Motion for Partial Summary Judgment, Plaintiffs request time and an opportunity for discovery pursuant to their counsel's Rule 56(f) Declaration.

Respectfully submitted on this 18th day of August, 2008.

*Barry V. Frederick*

Barry V. Frederick (FRE017)
Counsel for Plaintiff Kyle Edwards

OF COUNSEL:

THE FREDERICK FIRM
5409 Trace Ridge Lane
Birmingham, Alabama 35244
(205) 739-0043 phone
(205) 739-0044 fax

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing was served by filing the same with the Court's electronic filing system on this 18th day of August, 2008 upon the following:

Daniel D. Sparks
David B. Walston
John W. Macklem
Christian & Small LLP
1800 Financial Center
505 North 20th Street
Birmingham, AL 35203

Jennifer L Anderson
Jones Walker Waechter Poitevent Carrere & Denegre
8555 United Plaza Boulevard
Baton Rouge, LA 70809
janderson@joneswalker.com

Laurie M Chess
Jones Walker Waechter Poitevent Carrere & Denegre
601 Brickell Key Drive
Miami, FL 33131
lchess@joneswalker.com

I hereby certify that a true and correct copy of the above and foregoing was served by e-mail, by agreement of the parties pursuant to Fed. R. Civ. P. 5(b)(2)(D), on this 18th day of August, 2008 upon the following:

Stephen J Haedicke
Jones Walker Waechter Poitevent Carrere & Denegre
201 St. Chareles Avenue
New Orleans, LA 70170
shaedicke@joneswalker.com

*Barry V. Frederick*
Of Counsel

26