FILED

2008 Dec-11  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KYLE EDWARDS, et al., | } | |
| | } | |
| Plaintiffs, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 08-AR-1016-S |
| | } | |
| PRIME, INC., d/b/a RUTH'S | } | |
| CHRIS STEAK HOUSE, et al., | } | |
| | } | |
| Defendants. | } | |

**MEMORANDUM OPINION**

Kyle Edwards ("Edwards"), Diane George[1] ("George"), Ryan Cade ("Cade"), Kameron Battles ("Battles"), and Kelly Key ("Key"), individually, collectively, and on behalf of a class of similarly situated employees (collectively "plaintiffs"), sue their employer or former employer, Prime, Inc., d/b/a Ruth's Chris Steak House ("Prime"). They also name as defendants Markham Oswald ("Oswald"), owner of Prime, Ruth's Hospitality Group ("Ruth's"), franchisor of Ruth's Chris Steak House restaurants, and an individual known as Jesus Milano. Plaintiffs also purport to sue a "defendant RICO class" and a "defendant FLSA class," both of which are to be

---

[1]     This plaintiff is referred to in the styling of plaintiffs' complaint as "Diane Georde," as well as in the court's official records (which can be found on ECF). However, the substantive provisions of plaintiffs' complaint refer consistently to this plaintiff as "Diane George." Believing this discrepancy to be a typographical error originating in the styling of plaintiffs' complaint, the court will refer to this plaintiff as Diane George, believing it most likely that this is plaintiff's proper name. Counsel for plaintiffs may resolve this issue by contacting the clerk's office.

represented by Prime and Ruth's, on behalf of a putative class of franchisees who operate or have operated restaurants called "Ruth's Chris Steak House."

Plaintiffs, in an unmanageable fourteen count complaint, begin by alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* They next allege interference with business and contractual relations ("interference") and conversion under state law. George, Battles, and Edwards bring separate and independent claims of discrimination against less than all defendants in violation of 42 U.S.C. § 1981. Edwards brings a separate state law claim of assault against Prime and Molina. Last, all plaintiffs, for themselves and on behalf of those similarly situated, bring a state common law claim of negligent and wanton supervision and retention against some but not all defendants.

Before the court is the motion of defendants, Prime, Ruth's, and Oswald (collectively "defendants"), to dismiss and for partial summary judgment. The court will rule on defendants' Fed. R. Civ. P. 12(b)(6) motion, but will reserve ruling on defendants' motion for partial summary judgment until discovery has been conducted.[2]

---

[2]    For purposes of a Rule 12(b)(6) motion, the court takes as true the facts alleged in the complaint and draws all reasonable inferences in plaintiffs' favor. *See Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). The complaint's allegations must plausibly suggest a right to relief, raising that right "above the

For the reasons that follow, defendants' motion to dismiss will be granted in part and denied in part.

## DEFENDANTS' MOTION TO DISMISS IN PART

Defendants move to dismiss the following claims: the RICO claim (Count I); all of the FLSA claims (Counts II-VI) against defendants and the class of "all franchisees" of defendant Ruth's; the claim of interference (Count VII); the conversion claim (Count VIII); plaintiff George's individual claim of sex and national origin discrimination under § 1981 (Count IX); plaintiff Battle's individual claim for race-based discrimination under § 1981 (Count X); plaintiff Edwards's individual claim for national origin discrimination under § 1981 (Count XI); plaintiff Edwards's common law assault claim (Count XIII); and, the common law claim of negligent supervision (Count XIV). The court will discuss each in turn.

### *Facts*

Plaintiffs' shotgun complaint is so convoluted in its presentation of facts that it turns into an indecipherable hodgepodge. With so many plaintiffs, classes of plaintiffs, defendants, classes of defendants, and incompatible counts, to keep track of it all is a task beyond the capability of this court.

---

speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient. *Id.*

Beginning with Count I, plaintiffs "reassert all allegations above," continuing in that manner, with some exceptions, throughout. The complaint commingles almost every factual allegation and claim made. Likewise, the requests for class certification, buried within the lengthy complaint, attempt to drive two wagons down one path at the same time. Plaintiffs request certification of both plaintiff and defendant RICO classes pursuant to Fed. R. Civ. P. 23. They also seek conditional certification of a collective class for purposes of their FLSA claims and apparently some of their state law claims in order to facilitate notice. Yet, they make no attempt to accommodate the differing standards between Rule 23 and an FLSA collective action, reducing it all to a formulaic recitation of Rule 23 requirements. Further, they fail to comprehend the inappropriateness and impossibility of a collective action for many of their claims. Plaintiffs ask the impossible of the court, namely, to make sense of it all.

The basic facts, as alleged, as best this court can understand them, are as follows. All named plaintiffs are current or former employees of Prime at the Ruth's Chris Steak House in Birmingham, Alabama, located in the lobby of the Embassy Suites hotel. For the past three years, the putative defendant RICO class has hired and employed undocumented illegal aliens without timely requiring proof of their eligibility to work in the United States and despite the inability of the said employees to produce such proof. Prime and

4

the defendant RICO class allow undocumented workers to clock in under the names of, and to use the Social Security numbers of, other individuals. The defendant RICO class also gives these employees more time than is federally mandated to produce the necessary paperwork for establishing eligibility for employment in the United States and fails to follow up to make sure that the necessary paperwork is ultimately produced. Prime has paid, and may still pay, ineligible employees in cash. Further, Prime employed, and may still employ, in a supervisory capacity a person informally known as "the Mexican Mafia," due to his ability to quickly secure illegal aliens for employment. Prime also trashed "no-match" letters from the federal government (advising Prime that restaurant employees' names and social security numbers did not match). An INS "sweep" was made of Prime's Birmingham Ruth's Chris Steak House. On the morning the sweep occurred, many Hispanic employees did not report to work. Instead, they came late and wore different name tags.

Plaintiffs Edwards, Cade, Battles, and Key, on behalf of themselves and those similarly situated (collectively "the FLSA plaintiffs"), assert various FLSA claims against the FLSA defendants. According to the allegations, it is standard practice for Prime to take tips from servers. First, Prime and Oswald take a percentage of tips given to servers by customers and place the money into a "tip pool." This money is used to pay other employees,

some of whom are not eligible to participate in any such pool. Second, Prime takes a set percentage of money for "the house" from every banquet server, evidenced by a tip report appended to the complaint. That tip report indicates that 5% of a 20% standard gratuity is paid into the house by banquet servers. Third, management-level employees of Prime have made it a practice to call customers who they felt tipped a server too handsomely. They require the customer to reduce the tip or to eliminate it altogether. The FLSA plaintiffs have all had tips taken from them in one or more of these ways. And, they have all worked in positions for which Prime claimed a "tip credit" under the FLSA, a credit ill-claimed, according to plaintiffs, due to Prime's practice of taking tips.[3]

It is further alleged that defendants have required the FLSA plaintiffs to perform excessive non-serving tasks and duties, to work in some respect at the restaurant hours before it opens to the public,[4] and to remove trash from the hallways of the adjoining

---

[3]     Under the FLSA, an employer may take a tip credit of up to $3.02 ½ per hour for "tipped employees," if the following conditions are met: "(1) The employee must be a tipped employee; (2) The employee is informed about the provisions of the tip credit; and (3) The employee must retain all tips received, (4) Except that pooling of tips among tipped employees is permitted." 1 Wage and Hour Law § 8:24 (2008) (citing 29 U.S.C. § 203(m)).

[4]     The complaint does not state what kind of work employees are engaged in at the restaurant before business hours.

hotel.[5] Defendants took the "tip credit" for hours spent by the FLSA plaintiffs engaging in this excessive, non-serving work. Defendants did not pay the FLSA plaintiffs any direct minimum and/or overtime wages for this extra work. On occasion, a supervisor or manager "clocked out" an employee who was still working or went back and docked hours from that employee, never paying them any wage for this time worked. Accurate records are not maintained as to hours worked by employees.

Plaintiff George, a black female, was formerly employed by Prime at the Birmingham location. While George was working for Prime, Hispanic members of the kitchen staff would make derogatory gestures towards her and referred to her as a "black bitch." She also was denied a raise that had been promised to her.

Plaintiff Battles, a black male, still works for Prime. Prime refused to assign him to open positions as a server and to give him shifts as a server on many occasions, giving these plum positions instead to non-black employees. Battles was trained and certified to hold a serving position. These non-black employees were hired after, and were trained in part by, Battles. Battles did eventually obtain a serving position.

---

[5]     The Birmingham, Alabama, Ruth's Chris Steak House owned by Prime is located on the bottom floor of a hotel. Occupants of the hotel can order room service from the restaurant.

Plaintiff Edwards, a white male[6] and United States citizen, works for Prime. He has been the target of repeated acts of harassment by Prime's Hispanic employees who have threatened him on the job. Edwards and his attorney complained to Prime's management and counsel. Nonetheless, Prime would not and did not take action to prevent or to remedy the situation. On Sunday, May 11, 2008, defendant Jesus Molina, an employee of Prime, assaulted and harassed Edwards at work. Molina cursed Edwards, threatening to cut his throat.[7] After Edwards's counsel delivered a draft complaint to the General Manager of Prime's Ruth's Chris Steak House in Birmingham, Prime, Oswald, and Ruth's again harassed Edwards and subjected him to strict scrutiny. A picture of Edwards's counsel was posted in the office of Prime's Birmingham location along with an instruction to report his presence in the restaurant to management. Prime also excluded Edwards's participation in the pension benefit retirement plan.

### *Analysis*

### *Plaintiffs' RICO claim (Count I)*

Pursuant to 18 U.S.C. § 1962(c), it is illegal "for any person

---

[6]    The complaint does not tell Edwards's race. The court assumes Edwards is white, because plaintiffs explicitly indicates elsewhere in the complaint, as to other plaintiffs, when an individual was black.

[7]    It is unclear whether Edwards complained about the threats before or after he was allegedly assaulted by Molina. The only date given is the date of the assault. Further, there is no allegation that Molina threatened Edwards at any time other than when the assault occurred.

employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c).[8] To "establish a federal civil RICO violation under § 1962(c), the plaintiffs 'must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006)(quoting *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994))(one set of quotation marks omitted). "The plaintiff must, of course, **alleged each of these elements** to state a claim." *Sedima, S.P.R.L., v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)(emphasis added).

Plaintiffs claim that defendants engaged in racketeering activity in violation of 18 U.S.C. § 1961(1)(f), which defines "racketeering activity" to include any act indictable under the Immigration and Nationality Act, section 274, if the act was committed for financial gain. 18 U.S.C. § 1961(1)(f); *Williams*, 465 F.3d at 1283. Specifically, plaintiffs allege in their complaint

---

[8]     Plaintiffs failed to set out in their complaint which particular subsection of § 1962 had been allegedly violated. Because plaintiffs did not object in their response, and because the court finds defendants' deductions solid in this regard, the court accepts the defendants' assertion that plaintiffs are proceeding on a § 1962(c) theory. (Defs.' Mot. to Dismiss in part & Mot. for partial Summ. J.  n.7).

repeated violations by defendants of 8 U.S.C. § 1324a(a)(1)-(2),[9] 8 U.S.C. § 1324(a)(3)(A), 8 U.S.C. § 1324(a)(1)(A)(iv), and 8 U.S.C. § 1324(a)(1)(A)(iii). Defendants insist that plaintiffs have failed to plead a racketeering activity. The court will evaluate the allegations as to each statute to determine whether plaintiffs have stated a plausible claim for relief under that statute.

### a. 8 U.S.C. § 1324a(a)(1)-(2)

Section 1324a, which makes it a federal crime to hire and continue to employ aliens known to be unauthorized for employment, is not a RICO-predicate act under § 1961(1)(f). *See Trollinger v. Tyson Foods, Inc.*, 543 F. Supp. 2d 842, 846 n.2 (E.D. Tenn. 2008); *Hernandez v. Balakian*, 480 F. Supp. 2d 1198, 1204 (E.D. Cal. 2007); *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 309 (D.N.J. 2005); *System Mgmt., Inc. v. Loiselle*, 91 F. Supp. 2d 401, 408-09 (D. Mass. 2000). Thus, an allegation that defendants have violated this statute cannot support a right to relief under RICO.

### b. 8 U.S.C. § 1324(a)(3)(A)

Section 1324(a)(3)(A) requires *actual knowledge* that the hired individuals are unauthorized aliens who have "been brought into the United States *in violation of this subsection.*" 8 U.S.C. § 1324 (a)(3)(A),(B)(i)-(ii)(emphasis added). The proper interpretation of

---

[9]   The complaint, despite a typographical error, appears to attempt to use 8 U.S.C. § 1324a(a)(1)-(2) as a predicate act for the RICO claim.

§ 1324(a)(3), due to the reference to "this subsection," is the subject of some debate. Several courts have held that "to state a civil RICO claim on the basis of a violation of this subsection of Title 8, [the plaintiff] must allege that [the defendant] had knowledge of how the aliens had been brought into the United States and that they were *brought* into the United States" for the purpose of illegal employment. *Loiselle*, 91 F. Supp. 2d at 408. (emphasis in original); *see also Zavala,* 393 F. Supp. 2d at 309; *Trollinger,* 543 F. Supp. 2d at 846 n.2. As defendants point out, at least one court disagrees with this interpretation and holds that "§ 1324(a)(3)(B)(ii)'s reference to 'this subsection' refers to *subsection (a) of § 1324* generally, not to *paragraph (3) of subsection (a) of § 1324.*" *Hager v. ABX Air, Inc.*, No. 07-0317, 2008 WL 819293, at *11-13 (S.D. Ohio Mar. 25, 2008). To properly plead a violation of § 1324(a)(3) under this line of reasoning, "a plaintiff must allege that the defendant (1) had actual knowledge that the aliens it employed were unauthorized aliens . . . (2) and had *actual knowledge* that the aliens had been *brought into* the United States in violation of one of the provisions of § 1324(a)." *Id.* (emphasis added).

The Eleventh Circuit has not yet decided which interpretation of § 1324(a)(3)(B)(ii) is the proper one. This court will not attempt to resolve the issue because plaintiffs have not pled facts sufficient to state a claim under either interpretation, as both

require knowledge on the part of defendants that the alien
employees were *brought* into the country illegally. While
plaintiffs' complaint alleges that defendants had knowledge that it
employed unauthorized aliens, the complaint lacks allegations of a
subjective belief on the part of defendants that they employed
illegal aliens who had been *brought* into the United States
illegally. Although the court draws all reasonable inferences in
plaintiffs' favor, it would not be reasonable to infer that an
employer's employment of individuals it knows are unauthorized to
work in this country equates to knowledge that the individuals were
initially *brought* into this country illegally. Plaintiffs suggest
in their response that "if they are illegal aliens, *a fortiori*,
someone brought them here even if it was themselves." (Pls.' Resp.
10). This assertion is faulty. Individuals who enter this country
legally may overstay their welcome and become unauthorized to work
without ever having been *brought* in illegally, whether by others or
by themselves. Plaintiffs are required to allege something more
than the fact that defendants knowingly hired aliens whom they knew
lacked authorization to work in order to state a § 1324(a)(3)(A)
predicate act. The court will disregard allegations made in
plaintiffs' response to defendants' motion that go outside of what
is contained in the complaint itself.

**c. 8 U.S.C. § 1324(a)(1)(A)(iv)**

Mere employment of illegal aliens is not enough to establish

a violation of 8 U.S.C. § 1324(a)(1)(A)(iv), which makes it a federal crime to "encourage[] or induce[] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of the law." *See Khanani*, 502 F.3d at 1289. Defendants argue in their motion that plaintiffs' complaint lacks any factual allegations that this crime occurred. This court agrees. Outside of providing illegal aliens with employment, which is penalized by 8 U.S.C. § 1324a, and taking actions incidental to that employment, the facts do not plausibly support a right to relief for plaintiffs based on a § 1324(a)(1)(A)(iv) violation.

**d. 8 U.S.C. § 1324(a)(1)(A)(iii)**

Section 1324(a)(1)(A)(iii) punishes any person who

knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation;

As this court noted earlier, plaintiffs have alleged facts that, if taken as true, show that defendants were aware they employed illegal aliens. Thus, the issue is whether they concealed, harbored, or shielded these aliens from detection. There is little case law describing the type of conduct this statute refers to, except by way of example. *See U.S. v. Zheng*, 306 F.3d 1080, 1087 (11th Cir. 2002)(providing housing and employment found to constitute

13

concealing, harboring, or shielding illegal aliens from detection); *U.S. v. Tipton*, 518 F.3d 591, 595 (8th Cir. 2008)(providing aliens a place to live, daily transportation, and money to purchase necessities and maintaining counterfeit immigration papers for each alien, in addition to employing the aliens, found to constitute harboring); *U.S. v. Singh*, 261 F.3d 530, 533 (5th Cir. 2001)(providing the back room of a store as a residence to illegal aliens working in the store found to constitute harboring)*; Zavala*, 393 F. Supp. 2d 295 (recklessly disregarding the illegal status of employees found not to equate to concealing, harboring, or shielding illegal aliens from detection).

To allege a violation of § 1324(a)(1)(A)(iii), the conduct complained of must be conduct that substantially facilitates an alien's ability to remain illegally in the United States; knowing employment of illegal aliens, while in violation of the law, is not a violation of this statute. *See Zheng*, 306 F.3d 1080; *see also U.S. v. Herrera*, 584 F.2d 1137, 1144 (2nd Cir. 1978)("In short, if, despite the employment relationship, defendants have acted by providing shelter or other services to substantially facilitate the aliens remaining in this country illegally, they may be found guilty of harboring" under 8 U.S.C. § 1324(a)(1)(A)(iii).).

The only facts in the complaint that arguably support a violation of § 1324(a)(1)(A)(iii) are the allegations that a previous INS "sweep" of Prime's Birmingham Ruth's Chris Steak House

resulted in many Hispanic employees coming to work late wearing different name tags. Even if a reasonable inference could be drawn from this allegation that defendants warned illegal employees of the impending sweep, and the court is not saying that it could, the complaint is still short of facts to support a plausible right to relief under RICO.

**e. The RICO pattern requirement**

To plead a civil RICO claim under § 1962(c), a plaintiff must allege a ***pattern*** of racketeering activity. *Jones*, 18 F.3d at 910. Defendants point out that plaintiffs fail to plead a ***pattern*** of such activity. A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). The facts alleged in this complaint could, at most, suggest that a single racketeering act occurred, namely, that defendants shielded illegal aliens from detection by warning them of an impending INS sweep. A single racketeering act is not enough to support a RICO action.

Inasmuch as plaintiffs have, at most, suggested only one act of racketeering activity, Count I of plaintiffs' complaint fails to state a claim for which relief can be granted and would be dismissed for that reason if not for lack of allegations of indictable criminal conduct.

***Plaintiffs' FLSA claims against Ruth's franchisees***

In Counts II, III, IV, V, and VI, the FLSA plaintiffs present

various wage-and-hour claims against the defendant FLSA class, which includes certain unspecified "franchisees of Defendant Ruth's Chris that operates [sic] restaurants named 'Ruth's Chris Steak House.'" Defendants say that this claim should be dismissed as to the franchisees, because the complaint contains no allegations that the franchisees are the FLSA plaintiffs' employers or are otherwise involved in Prime's affairs.

Only employers are bound by the requirements of the FLSA. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984); *see also Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008). "Employer" is defined by statute as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Whether an entity is an employer under this definition "does not depend on technical or isolated factors but rather on the circumstances of the whole activity." *Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir. 1973)(internal quotation marks omitted).

All of the named FLSA plaintiffs now work for or have worked for the same franchisee, Prime, at the same Birmingham restaurant, owned and operated by Prime. Defendants point out that plaintiffs have failed to plead that any of the unspecified franchisees acted either directly or indirectly on behalf of Prime in relation to its employees. Thus, according to defendants, plaintiffs have failed to plead that these franchisees were their employer, as necessary for

a FLSA action. The FLSA plaintiffs, in their response to defendants' motion, concede that they have not pleaded and cannot allege that any of these franchisees are the named FLSA plaintiffs' employers. Instead, they argue that defendant Ruth's is the employer of anyone and everyone working at a Ruth's franchise. It follows, according to plaintiffs, that they, as representatives of similarly situated unnamed individuals, should be allowed to sue Ruth's and all of its franchisees because of the possibility that one or more of the unnamed putative class plaintiffs might be employed by one or more unnamed putative class franchisees.

For the purpose of ruling on the motion to dismiss, the court accepts as true the assertion that Ruth's is an employer of the FLSA plaintiffs and similarly situated employees. However, the court will not allow the inference that employees of franchisees that operate Ruth's Chris Steak House restaurants all over the country are similarly situated to the named FLSA plaintiffs in this action. Which franchisees do the FLSA plaintiffs target with their claims, and what activity have these franchisees engaged in that makes them similarly situated to defendant Prime? There are no more than the most general allegations in the complaint that these franchisees follow the same practices as defendant Prime. Where specific facts are alleged, these franchisees are not mentioned, creating, at times, logical inconsistencies. For example, the complaint alleges that "[e]ach FLSA Plaintiff and others similarly-situated

individuals have worked and/or still work for Defendant Prime . . . ." (Pls.' Compl. 23). Taken as true, this allegation suggests that all similarly-situated individuals have worked, or still work, for defendant Prime. Why then must all other Ruth's franchisees be involved in this action? The request to certify a nation-wide plaintiffs' class and a nation-wide defendants' class in a case in which some of the named plaintiffs have discrete local claims is a request that this court could not grant.

The FLSA plaintiffs fail to allege that other franchisees employed individuals who were similarly situated to the named FLSA plaintiffs. The only specific facts alleged refer to Prime, and it would not be reasonable for the court to infer that all other franchisees engaged, or continue to engage, in like conduct. Thus, plaintiffs' argument that these franchisees should remain in the case due to the collective nature of a FLSA action fails. This argument cannot overcome the failure to allege that these franchisees are plaintiffs' employers, and the failure adequately to plead facts to suggest that these franchisees took actions in violation of the FLSA against employees who are sufficiently similarly situated to the named FLSA plaintiffs. Defendants' motion to dismiss the action against all unnamed franchisees will be granted without prejudice.

***Plaintiffs' claims of interference and conversion***

18

In Count VII and Count VIII, the FLSA plaintiffs[10] allege that the conduct of the defendant FLSA class[11] tortiously interfered, and continues to interfere, with the FLSA plaintiffs' business and contractual relations with customers of Ruth's Chris Steak House. Further, they allege that the FLSA defendants' said conduct constituted, and continues to constitute, conversion of monies rightfully due to them. The FLSA defendants contend that the FLSA plaintiffs have failed to state a claim as a matter of law, due to the paucity of specific facts to support this claim. In the alternative, the FLSA defendants argue that if these counts are meant to be supported by the same facts that are the basis of the FLSA claims, the state law claims are preempted by the FLSA and should be dismissed.

To plead the tort of intentional interference with business or contractual relations a plaintiff must adequately allege the following: "the existence of a contract or business relation; the defendant's knowledge of the contract or business relation; intentional interference by the defendant with the contract or business relation; . . . and, damage to the plaintiff as a result of the defendant's interference." *Bailey v. Allgas, Inc.*, 284 F.3d

---

[10]     As noted previously, the FLSA plaintiffs include Edwards, Cade, Battles, and Key, on behalf of themselves and others similarly situated.

[11]     As noted previously, the FLSA defendants include Prime, Ruth's Chris and Oswald, themselves and as representatives of "all franchisees."

1237, 1256-57 (11th Cir. 2002).

The court will assume that the basis of the interference claim lies in the allegations that the FLSA defendants took tips and took action to get customers to reduce or eliminate tips if they were thought to be too generous. These facts, if taken as true, cannot plausibly support an actionable claim for interference. The complaint fails to address an essential element of this cause of action, namely, what business relation, or contract, existed between the FLSA plaintiffs and patrons of their employer, Prime. If the FLSA plaintiffs believe that a business relation or contract existed and/or continues to exist between them and defendants' customers, they fail to allege any facts to demonstrate it. The claim for interference will be dismissed.

The FLSA plaintiffs also allege that the FLSA defendants' conduct constitutes conversion. Again, the court will assume that the conduct to which the complaint refers is that conduct involving tips. To establish a claim for conversion, a plaintiff must prove that there has been "a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of [plaintiff]'s property, or a wrongful detention or interference with [plaintiff]'s property." *See Southtrust Bank v. Donely,* 925 So. 2d 934, 939 (Ala. 2005). Further, it is well-settled that "an action for conversion of money will not lie unless the money is specific and capable of identification." *Id.* at 939-40 (citing a string of cases supporting

this proposition). At this early juncture, the money at issue does not have to be described with the utmost specificity.  Reviewing the complaint in the light most favorable to the FLSA plaintiffs, they have alleged facts sufficient to support a conversion claim, but the conversion claim will not proceed unless it is found not to be preempted by the FLSA.

"Courts have consistently held that 29 U.S.C. § 216(b) is the exclusive remedy for enforcing rights created under the FLSA." *Morrow v. Green Tree Serv., LLC*, 360 F. Supp. 2d 1246, 1252 (M.D. Ala. 2005). Common law claims based on the same facts and circumstances as a FLSA claim are preempted, especially where they differ only in regard to remedy. *See Alexander v. Vesta Ins. Group, Inc.*, 147 F. Supp. 2d 1223, 1240-41 (N.D. Ala. 2001). "As a matter of law, [a] plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state law claims in addition to the FLSA claim." *Tombrello v. USX Corp.*, 763 F. Supp. 541, 545 (N.D. Ala. 1991). The FLSA plaintiffs' complaint provides no basis for belief that the conversion claim provides any greater rights than the FLSA claim. To the contrary, Counts VII and VIII merely refer to the previously averred set of convoluted facts in support of vague allegations. It is impossible to see how the conversion claim is in any way independent of the FLSA claims, both in the facts supporting them and the rights offered by them. The court will dismiss the conversion claim as preempted by the wage

and hour claims.

### The § 1981 claims

In Count IX, plaintiff George asserts an individual claim against Prime for a "hostile discriminatory environment on the basis of her race and national origin, and her race plus her sex, and her national origin plus her sex, in violation of 42 U.S.C. § 1981." In Count XI, plaintiff Edwards claims Prime subjected him to a hostile discriminatory environment on the basis of his race and national origin, in violation of 42 U.S.C. § 1981. As now conceded by plaintiffs, § 1981 authorizes neither claims of sex discrimination nor claims of national origin discrimination. Accordingly, George's sex and national origin discrimination claims and Edwards's national origin discrimination claim, all brought pursuant to § 1981, will be dismissed.

In Count X, plaintiff Battles asserts a § 1981 race discrimination claim against Prime, alleging that Prime discriminated against him on the basis of race when it refused to assign him to positions as a server, giving server positions to employees who were not black and who were less qualified than he. Defendants contend that Battles has failed to allege an adverse employment action, an essential to a claim for race discrimination under § 1981. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 n.34 (11th Cir. 2001)("The plaintiff must show that an adverse employment action was taken against him regardless of

whether he is relying on direct evidence of discrimination or employing the burden-shifting approach established in [*McDonnell-Douglas*].”). Defendants also point out that the complaint evinces that Battles has actually held server positions and holds a server position at present.

The Eleventh Circuit has adopted no “bright-line test for what kind of effect on [a] plaintiff's 'terms, conditions, or privileges' of employment the alleged discrimination must have for it to be actionable.” *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1238 (11th Cir. 2001); *see* 42 U.S.C. § 2000e-2(a). However, it has held that an employee must show “a *serious and material* change in the terms, conditions or privileges of employment” *Id.* at 1239-40 (holding that, where there was no economic injury, an unquantifiable injury to prestige and loss of potential experience was not sufficiently serious to constitute a material change in employment); *see also Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). This is not the proper time for determining whether being denied a server position on a number of occasions amounts to an actionable adverse employment action. With some discovery, it may become apparent that being denied the opportunity to work as a server is, or is not, sufficiently serious and/or economically detrimental to constitute an adverse employment action. At this early juncture enough factual matter has been alleged so that Battles's § 1981 claim passes muster under Rule 12(b)(6). Under a

Rule 56 analysis the answer may be different. Also, it is worth noting that to be a class representative requires adequacy, something virtually impossible for a person with discrete, different claims.

### *Edwards's claim of assault against Prime*[12]

In Count XIII, Edwards alleges that Jesus Molina, as an employee and agent of Prime, assaulted and harassed him. The incident occurred on May 11, 2008, while both were working for Prime's Ruth's Chris Steak House in Birmingham, Alabama. Molina is a named defendant, but remains unrepresented. After he failed to respond, a default was entered against him by the clerk. Aside from the physical assault, the only other allegation made in support of the claim of assault is that Molina cursed Edwards and threatened to cut his throat.

Under Alabama law, an employer is liable for the intentional torts of an employee only if "[1] the agent's wrongful acts were in the line and scope of his employment; or [2] . . . the acts were in furtherance of the business of the employer; or [3] . . . the employer participated in, authorized, or ratified the wrongful acts." *Meyer v. Wal-Mart Stores*, 813 So. 2d 832, 838 (Ala. 2001).

---

[12]    Plaintiffs' complaint entitled Count XIII, "Plaintiff Edwards' Supplemental State Law Claims of Assault and Harassment." Because Alabama does not recognize a tort of harassment, the court construes this Count as an attempt to allege an assault claim only. It appears to have been the intent of plaintiffs that this be done, as their response to defendants' motion to dismiss addresses this Count as "Plaintiff Edwards [sic] Assault Claim Against Defendant Prime."

The complaint contains no link of liability between the altercation between Edwards and Molina, and Prime, their mutual employer. The fact that the assault occurred at work, during working hours, cannot bear the weight of the claim of assault against Prime without some other measure of support.[13] Because Edwards has failed to allege "enough facts to state a claim to relief that is plausible on its face," *see Twombly*, 127 S. Ct. at 1965, the claim of assault will be dismissed as against Prime. What to do about Molina, who is not a target of plaintiffs' myriad of other claims is another matter for another time.

It should be noted that if the court were to strain to infer that one of the above three requirements for a finding of employer liability can be found in the complaint, defendants' motion would still be granted, because Alabama's Workers' Compensation Act ("AWCA") would be Edwards's exclusive remedy. Edwards's response to the motion makes no attempt to address Prime's argument that, under the facts in the complaint, it cannot plausibly be held liable for

---

[13]    In Count XI, Edwards asserts that he suffered a hostile discriminatory environment and, in support, alleges that Prime's supervisory and/or managerial personnel knew about this environment and the fact that certain workers had threatened Edwards while on the job. However, this information is not set out in the fact section of the complaint, nor is it incorporated by reference in the assault count. Thus, the courts' understanding is that these facts are relied upon by Edwards for his discrimination claim only and do not go to his assault claim (where plaintiffs wished to incorporate by reference they did so explicitly by pleading that "[a]ll allegations above are reasserted"). Even if it were considered in support of the assault claim, all of the facts alleged in the complaint, taken as a whole, suggest that this alleged assault arose out of the course of Edwards's employment. *See infra.*

an intentional assault committed by one of its employees. Instead, somewhat paradoxically, the response focuses exclusively on whether the assault claim would be preempted by AWCA. Edwards argues that his assault claim should be allowed to go forward because "the fact of a willful assault alone does not conclusively establish that the assault arose out of the course of the employee's employment." (Pls.' Resp. 18)(citing *Beverly v. Ruth's Chris Steak House*, 682 So. 2d 1360, 1362 (Ala. Civ. App. 1996)(stating that a willful assault by a coemployee may be considered an accident compensable under the AWCA, but only if it "arose out of the course of the employee's employment[,]" i.e., "the rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment")).

As this court understands it, in order for Prime to be liable for Molina's assault of Edwards outside AWCA as the exclusive remedy, the assault must not have arisen in the course of employment, and Prime, the employer, must have been involved in a liability-incurring way. Edwards's response fails to explain either how Molina was authorized by Prime to assault him or how he is not relegated to his AWCA remedy. Edwards's assault claim against Prime will be dismissed.

### Plaintiffs' claims of negligent & wanton supervision & retention

In Count XIV, plaintiffs allege that defendants Prime, Oswald, and Ruth's breached their duty to effectively supervise employees

26

of Ruth's Chris Steak House in order to train them not to subject plaintiffs and members of the classes they represent to "the conduct of which they complain." (Compl. 44). Within this count no specific conduct is alleged, and no allegations appearing earlier in the complaint are reasserted. Plaintiffs' response to defendants' motion reads as if plaintiffs are themselves as unsure as the court is, which conduct they are referring to: They simply say that "to the extent Plaintiffs' claims for negligent and wanton supervision and retention are based on Federal claims of discrimination, harassment, *and/or* intentional torts . . . [AWCA is not the exclusive remedy]." (Pls. Resp. 19)(emphasis added).

Which tortious action of defendants' employees is a tortious supervision or retention claim based on? In order to state a plausible claim for relief, plaintiffs must make more than a conclusory allegation. Plaintiff must allege that an agent committed a common-law, Alabama tort. *See Jackson v. Cintas* Corp., 391 F. Supp. 2d 1075, 1100 (M.D. Ala. 2005); *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002). Neither discrimination nor harassment constitutes a common law tort. The previously eliminated claims of intentional interference and conversion cannot serve as a basis for a claim of negligent supervision, simply because plaintiffs allege that defendants committed those torts. It would be illogical to hold defendants liable for failing to properly supervise themselves.

Inasmuch as plaintiffs rely on Edwards's claim of assault, only Edwards can pursue a negligent supervision claim based on that tort. Thus, a plausible right to relief could be stated on this claim as to Edwards only. As for the purported class, Edwards could not serve as a representative on this claim, even if viable, because the assault he allegedly suffered is a distinct act.

Defendants further argue that Edwards cannot state a claim of negligent supervision because AWCA's exclusivity provisions bar it. This is not necessarily so. Although it has been held that claims of negligence and wantonness are not excepted from AWCA's exclusivity provisions, it must first be established that AWCA is applicable to the underlying incident. While "a willful assault by a coemployee may be considered an accident compensable under the [AWCA]," whether it is or is not is to be determined from the circumstances of the case. *See Beverly*, 682 So. 2d at 1362. If the assault can be traced to a proximate cause set in motion by the employment, it will fall within the purview of the AWCA, as will the negligent and wanton supervision claim. Plaintiffs' complaint fails to plead any facts to suggest that the alleged assault was proximately caused by the employer. A claim of negligent supervision, to be successful, requires Edwards show that defendants knew, or should have known, that Molina was likely to assault him. *See Armstrong Bus. Servs., Inc. v. AmSouth Bank,* 817 So. 2d 665, 683 (Ala. 2001). Edwards will further "have to show

that the breach of the defendants duty to reasonably supervise [Molina] proximately caused [his] injury." *Patterson v. Augat Wiring Sys., Inc.*, 944 F. Supp. 1509, 1529 (M.D. Ala. 1996).

This court cannot see how Edwards can pursue a claim of negligent supervision, which resulted in an assault, without backing himself into the exclusivity provisions of AWCA. Defendants' motion to dismiss the negligent supervision claim will be granted. And, because there is no allegation within Count XIV, unless the name of the count be deemed to be such, regarding negligent or wanton retention, that claim will be dismissed.

## PLAINTIFFS' REQUEST FOR LEAVE TO AMEND

In partial reply to defendants' motion to dismiss, plaintiffs request leave to amend in the event the court finds that defendants' motion is well taken. The court will grant plaintiffs' request, except to the extent that it is dismissing several counts with prejudice. Plaintiffs would do well to use their opportunity to amend wisely. To the extent plaintiffs cannot repair counts to state plausible claims for relief, plaintiffs should acknowledge as much by not undertaking the impossible and not attempting to reload the kitchen sink.

## CONCLUSION

For the above-stated reasons, defendants' Rule 12(b)(6) motion will be granted in part and denied in part by separate order.

Plaintiffs' request for leave to amend their complaint will be granted with limitation. Defendants' Rule 56 motion for partial summary judgment will be stayed until discovery is conducted with the understanding that it may be amended.

   **DONE** this 11th day of December, 2008.

_____
     WILLIAM M. ACKER, JR.
     UNITED STATES DISTRICT JUDGE