FILED

2009 Feb-12  PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **KYLE EDWARDS,** | ) | |
| **DIANE GEORGE, RYAN CADE,** | ) | |
| **TERRENCE FORMAN,** | ) | |
| **KAMERON BATTLES,** | ) | |
| **KELLY KEY, JIMMY D. LINCOLN,** | ) | |
| **individually, collectively** | ) | |
| **and on behalf of a class of** | ) | |
| **similarly-situated employees,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | |
| | ) | **2-08-CV-01016-WMA** |
| **PRIME INC.,** *d/b/a* **RUTH'S CHRIS** | ) | |
| **STEAK HOUSE, and RUTH'S CHRIS** | ) | |
| **STEAK HOUSE, INC., and** | ) | |
| **MARKHAM OSWALD and another** | ) | |
| **individual who is known as Jesus Molina** | ) | |
| **(which or may not be his real name),** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS IN PART PLAINTIFFS' AMENDED COMPLAINT

---

## I.   INTRODUCTION

Defendants' protestations about "reloading the sink" should not be heard, given that Defendants' dirtied all the dishes, indeed they trashed the whole kitchen. In Plaintiffs' counsels 26+ years as a labor and employment attorney, he has never seen Defendants that so out of control as these, who appear more than willing even

anxious to violate every employment law they can.  It is as if, Defendants expect Plaintiffs to forego viable claims; of course, Plaintiffs do not expect Defendants to forego any defenses they think are viable.  All such expectations are nonsense.

Incredibly, Defendants start their blustering motion with unbelievable assertions like "Defendants are not certain exactly who Plaintiffs are trying to sue with respect to which of their claims …." (Defs' motion at 4).  That totally lacks credibility, and to use words of which Defendants are fond, is even shocking and offensive, unless one assumes Defendants cannot read, or did not read, Plaintiffs' prayer for relief in each count, all of which explicitly identify the Defendants against whom and which judgment is demanded on each count.

The only thing that is convoluted is Defendants attempts to make things convoluted.   One flagrant example is Defendants' making much ado about franchisees (Defs. Motion at 4-5, 16-18)) despite that, as shown on the face of the Amended Complaint there is no claim asserted against or any judgment sought against any franchisee other than Defendant Prime.  Defendants' argument on pages 16-18 of their Motion is wasted, because in the Amended Complaint, because, very simply, there are not any claims asserted against any franchisee other than Prime.  Defendants' arguments to the contrary are false.

Defendants' attempt to convolute the issues does not make the issues convoluted.    Defendants criticize the "breadth and boldness" of Plaintiffs'

allegations regarding the number of predicate acts.  If Defendants are so sure of the legality of the conduct of their enterprise in knowingly employing illegal aliens, and assisting them by paying them cash and providing them with social security numbers of former legal employees to use, Defendants will surely and unequivocally represent to this Court at oral argument that Defendant Prime did no such thing, much less time and time again.  The evidence will demonstrate the breadth and boldness of the extent to which Defendants' enterprise knowingly and intentionally violated the law.

There is absolutely no provision in the notice pleading requirements of the Federal Rules that requires Plaintiffs to plead all or any of the names and social security numbers falsely used by illegal aliens employed by Defendants' enterprise.  Indeed, whether it ever becomes possible to identify the true names of the illegal aliens remains to be seen, but it is a certainty their true names were not those of retired, elderly or deceased former railroad employees in the Mid-West of the United States.  It is equally certain that one particular illegal alien's true name was not that of the American whose name and SS# the illegal alien used after that American employee had left Prime's employment.

That Plaintiffs advance the evidentiary points above at this stage indicates the real purpose behind Defendants' motion, which is an attempt to uncover evidence.  That is what discovery is for.

Enough hyperbole, from both sides.  Plaintiffs will not (or could not) let defendants' hyperbole go unchallenged.  Now turning to the law as applied to Plaintiffs' allegations of fact, and the legal arguments in Defendants' motion.

## II.  RICO CLAIMS

A prime example of Defendants' attempt to convolute the issues is their statement:  "Turning first to Plaintiffs' central complaint – that Defendant Prime hired illegal aliens in violation of § 1324(a)(3)(a)." (Defs. Motion at 9).  Wrong.  The Amended Complaint does not make § 1324(a)(3)(a) Plaintiffs' central RICO claim; § 1324(a)(3)(a) is cited and mentioned only once in the Amended Complaint (¶ 36), which does not describe violations of that section as a "predicate act."  That moots as a red herring the pages of Defendants' arguments devoted to whether Plaintiffs had to plead Defendants had actual knowledge unauthorized aliens were brought into the United States in violation of that statutory section.

Plaintiffs' central RICO claims are for violations of § 1324(a)(1), not subsection (a)(3), as is plain from the unambiguous allegations in ¶ 34 of the Amended Complaint.  Defendants' knowledge of how illegal aliens came to be in this country is not required under the statutory sections cited in ¶ 34 of the Amended Complaint as the bases of Plaintiffs' claims under RICO:

- § 1324(a)(1)(A)(iii) (Amended Complaint ¶ 34(a)) (which is not regurgitated here);

- § 1324(a)(1)(A)(iv) (Amended Complaint ¶ 34(b)) (which is not regurgitated here); and

- § 1324(a)(1)(A)(v)(I)-(II) (Amended Complaint ¶ 34(c)), which is not regurgitated here).

There are an abundance of supporting allegations (Amended Complaint ¶¶ 17, 31-33), which are not specifically addressed or particularly mentioned in Defendants' Motion.

Plaintiffs stand on their allegations that, taken as true and as a whole, demonstrate the complex schemes, elaborate steps and artifices Defendants' enterprise concocted to hide illegal aliens as employees in the restaurant.  It is an easy inference that such schemes substantially facilitated illegal aliens to escape detection/deportation and to remain illegally in this country.  Defendants' motion hardly meets their burden to conclusively demonstrate there is no set of facts that would prove the violations of the alleged "predicate act" sections of § 1324 (a)(1).

As alleged, the alleged offending predicate acts involved much more than "mere employment" of known illegal aliens.  While there is no allegations the Defendants directly provided the illegal aliens with housing, transportation, clothing or food, by paying them in cash in secret fashion substantially facilitated their getting such things for themselves.  One obvious inference that can be drawn – illegal aliens had to transport, house, clothe and feed themselves.  It is unreasonable to assume they did not.  Cash payments allowed them to pay for such

things themselves.  Plaintiffs further submit it is a reasonable inference that illegal aliens will not remain where they have no money to eat, clothe or otherwise provide for themselves.  Defendants have not taken the unreasonable position that it employs the homeless as its servers and that its illegal aliens permanently remain and reside in a shelter or under a bridge somewhere.  Plaintiffs submit that an employer directly providing transportation, housing, clothing, etc. to illegal aliens or by providing illegal aliens with cash so they can get such things themselves is a distinction without a difference.  To hold otherwise would only encourage such surreptitious conduct even more.

Hiding, harboring and shielding illegal aliens in plain sight is still hiding, harboring and shielding them.  That Defendants' enterprise was good at violating RICO does not excuse the violations.  To hold otherwise, would only encourage those practiced at violating the law.  Providing cash to illegal aliens certainly would help them to remain in this Country, at least as much would directly provide them with housing, transportation, etc.  Cash certainly provides illegal aliens the means to get such things.  Under Defendants' arguments, indirectly violating the law (by providing cash instead of transportation, housing, etc. directly) is okay; which violates the age-old maxim of the law:  One cannot do indirectly what one cannot do directly. (No citation necessary).

### III.   THE STATE TORT CLAIMS ARE NOT PREEMPTED

Defendants, who fault Plaintiffs for not spelling out every detail of their claims in the Amended Complaint, do not identify the type of preemption on which they rely.  As the 11th Circuit has instructed:

> Federal law can preempt state law in several ways: Congress may expressly preempt state law; the federal scheme may be sufficiently comprehensive to make reasonable the presumption that Congress intended to "leave no room" for state law; or state law may conflict with federal law. California Federal Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987) (discussing preemptive effect of Title VII on state law). State law may conflict directly with federal law, such that compliance with both state and federal law is impossible, or state law may create an obstacle to the attainment of federal policy goals.[FN2] Id. Courts rely on Congress's intent in determining whether a federal statute preempts state law. Id. **The presumption is against preemption**. See Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981).

Broughton v. Courtney, 861 F.2d 639, 641 (11th Cir.1988) (emphasis added).

Starting with the Act, the FLSA itself does not contain any express preemption provision whatsoever, much less anything like the preemption provision that carries so much weight in ERISA, 29 U.S.C. § 1144(a).  Indeed, the Act itself expresses a Congressional intent against preemption:

> a) No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than

---

[FN2] A precondition to preemption on conflict grounds is that the state law must implicate a "uniquely federal interest." Boyle v. United Technologies Corp., 487 U.S. ----, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Potential civil liability of federal officials is a uniquely federal interest. Id., 108 S.Ct. at 2514.

7

> the maximum workweek established under this chapter, and no provision of this chapter relating to the employment of child labor shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than the standard established under this chapter. No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter.

29 U.S.C. § 218(a) (entitled "Relation to other laws").  Given § 218, it is beyond debate Congress lacked any intent "to 'leave no room' for state law."  The express language of the Act, in § 218, leaves such room.

The issue of preemption is also addressed in a Department of Labor Regulation also entitled "Relation to other laws," which is further contrary to preemption and leaves room for state law.

> Various Federal, State, and local legislation requires the payment of wages in cash; prohibits or regulates the issuance of scrip, tokens, credit cards, "dope checks" or coupons; prevents or restricts payment of wages in services or facilities; controls company stores and commissaries; outlaws "kickbacks"; restrains assignment and garnishment of wages; and generally governs the calculation of wages and the frequency and manner of paying them. Where such legislation is applicable and does not contravene the requirements of the Act, nothing in the Act, the regulations, or the interpretations announced by the Administrator should be taken to override or nullify the provisions of these laws.

29 C.F.R. § 531.26.

The regulation stands on the type of preemption known as "conflict preemption" and upholds state legislation unless it contravenes the requirements of

the FLSA (*i.e.*, unless state law conflicts with the mandates of the Act), Plaintiffs submit that there is no reason why State common law should not be similarly preserved.

There is no conflict between state tort claims and compliance with the FLSA here.  Compliance with both state and federal law is not impossible; indeed the Amended Complaint alleges that defendants committed tortious conduct regardless of whether they complied with the FLSA.

An example demonstrates the point:  if Defendants paid Plaintiffs at the cash register at the end of Plaintiffs' shifts all direct wages and tips to which Plaintiffs were entitled under the FLSA, and Defendants robbed Plaintiffs of the cash at gunpoint in the parking lot after Plaintiffs exited the restaurant to go home, under Defendants' argument about preemption Plaintiffs would lack any recourse under state tort law.

Moreover, Plaintiffs' State law tort claims do not create any obstacle to the attainment of federal policy goals of compliance with the FLSA.  If anything, state law tort claims further the attainment of compliance with the FLSA, by giving employers additional incentives to comply with the FLSA if non-compliance also constitutes tortious conduct.

Finally, "conflict" preemption must "implicate a 'uniquely federal interest,'" and wage and hour laws are not uniquely of federal interest.  Many, many states

have statutes and/or regulations that govern employees' wages and hours of work. The State of California is a prime example, and most employers consider its requirements quite onerous, much more so than the FLSA.

Defendants' motion is completely devoid of the analysis of the preemption principles that must be considered in this Circuit.  Instead of analysis, Defendants cite cases that are equally devoid of the analysis required in this Circuit.  Of the cases cited on pages 22-23 of Defendants' motion, Choimbol v. Fairfield Resorts, Inc. does not apply the 11th Circuit's analysis and instead, obsesses over whether the state law claims were duplicative or the equivalent of FLSA claims; Alexander v. Vesta Ins. Group, Inc. and Tumbrello v. USX Corp. contain no analysis of preemption principles and instead address preemption in perfunctory fashion; the words "preemption" and "preempt" do not even appear in the opinion in Nettles v. Techplan Corp.; and in the only other case, Morrow v. Green Tree Service, L.L.C., the court **denied** defendant's Rule 12(b)(6) motion on the ground of preemption and further cited to two decisions in which the **11th Circuit** ruled that the FLSA did not preempt state common law claims:  "Freeman v. city of Mobile, Ala., 146 F.3d 1292, 1298 (11th Cir. 1998) (holding that 'the FLSA does not preempt state law contract provisions that are more generous than the FLSA demands')" and "Avery v. City of Talladega, Ala., 24 F.3d 1337, 1348 (11th Cir. 1994) (holding that the FLSA does not preempt a state law contractual claim that seeks to recover wages

for time that is compensable under the contract but not under the FLSA)." Morrow, 360 F. Supp. 2d at 1252.

The Eleventh Circuit's decisions against FLSA preemption, in Avery holding "the district court erred" ruling in favor of preemption, trump the District Court cases on which Defendants rely and their lack of the analysis required in this Circuit. That alone or combined with Plaintiffs' preemption analysis set forth above, warrant rejection of Defendants' preemption argument here.

## IV.   THE AMENDED COMPLAINT STATES A COGNIZABLE CLAIM FOR INTENTIONAL INTERFERENCE UNDER ALABAMA LAW

Defendants first assert that "Plaintiffs did not specify what contract Defendants allegedly interfered with," (Defs. Motion at 18), which is patently false assertion, as demonstrated by the very next sentence in Defendants' motion, which identifies one contract plaintiff identified in the Amended Complaint. Defendants ridicule (Defs. Motion at 18-19) the allegation, despite that the law requires them to accept it as true and despite the fact that it is true, as Plaintiffs will prove.

Paragraph 97 also identifies a business relation between bussers, runners and servers who participate in the tip pool, which as a matter of law must be pursuant to an agreement between those who participate in it, 29 C. F. R. § 531.54 (requiring that they "mutually agreed among themselves," not their employer). For banquets and tables seating a certain large number of patrons, they (patrons) agree to pay and do pay a particular minimum percent as a gratuity as well as a service

charge, which as Defendants well know, is billed and presented to the patron who pays the bill for the party or banquet. The only thing "ridiculous" is defendants' hyperbole ridicule. Perhaps some are unaware that many who have a job as a server consider customers sitting at his or her designated tables as patrons of the server as well as that of the restaurant. To assert as Defendants do – that "patrons are customers of Prime, not Plaintiffs," (Defs. Motion at 19) is pure malarkey.

In addition to attempting to rely on hyperbole ridicule and refusing to accept Plaintiffs' factual allegation as true, Defendants argue that Plaintiffs must plead that Defendants are strangers to the contractual and business relations that were subject to defendants' interference. They cite no case imposing any such pleading requirement, and this Court did not list any "no-stranger" element as an element of the cause of action as described in this Court's Opinion of Dec. 11, 2008, on page 19.

The "no-stranger" factor has never been identified by the Alabama Supreme Court as an element of a cause of action for intentional interference.

Finally, Defendants' motion fails to allege how they are not strangers to the contractual and business relationships identified in the Amended Complaint. When they fail to plead their defense with particularity and specificity, they cannot be heard to argue that Plaintiffs failed to plead their claims particularity and specificity under Federal notice pleadings.

Defendants' reliance on cases dealing with the employment contract or employee-employer relationship is misplaced. Plaintiffs' claims for interference are not based on their employment contract or relationship with Defendants. The separate, independent contract on which Plaintiffs' claims are based and which Defendants fail to recognize is the one established by the Department of Labor's regulation at 29 C.F.R. § 531.52, which provides, in pertinent part:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity. In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer.

29 C.F.R. § 531.52. The gift or gratuity of a tip to a server is a contract separate and apart from the employment contract between Plaintiffs and Defendants and separate even from the contract between Defendants and customers. Although the Defendants may have facilitated the occasion by which the "gift or gratuity" was presented, Defendants have no interest in the tip transaction itself and are, therefore, strangers to it.

As the DOL makes clear, even if Defendants are informed of the tips for purposes of effecting a pooling arrangement, they have no interest in the tip transaction itself, as the regulations further provide, in pertinent part:

> [W]here an accounting is made to an employer for his information only or in furtherance of a pooling arrangement whereby the employer redistributes the tips to the employees upon some basis to which they have ***mutually agreed among themselves***, the amounts received and retained by each individual as his own are counted as his tips for purposes of the Act.

29 C.F.R. § 531.54.  The pooling agreement is among and between the tipped and tip pool employees, and does not include Defendants.  Moreover, DOL regulations make a distinction between any service charges or other transactions between the customer and the restaurant and the tip transaction, directing that the tip is the property of the server and potentially other tip pool employees with whom a mutual agreement to share the tips is made.

Alternatively, if this Court decides the Defendants are not strangers to the tip transaction at issue, the case cited by Defendants, indeed, the very quote itself, provides an alternate legal basis for Plaintiffs' interference claims.  In pertinent part, the Alabama Supreme Court held:

> [W]hen tripartite relationships exist and disputes arise between two of the three parties, then a claim alleging interference by the third party that arises from conduct by the third party that is ***appropriate*** under its contract with the other two parties is not recognized.

Colonial Bank v. Patterson, 788 So.2d 134, 138 (Ala. 2000) (emphasis added). The Alabama Supreme Court explained that what it "meant by "appropriate" [was] conduct a party has the legal right to take."  Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1154 (Ala. 2003).  Here, Defendants do

14

not have the "legal right" to the conduct challenged by Plaintiffs. Defendants have no right to take Plaintiffs' tips as outlined in 29 C.F.R. § 531.52, *supra*.

## V.   PLAINTIFF EDWARDS STATED A CLAIM FOR A RACIALLY DISCRIMINATORY HOSTILE ENVIRONMENT

Plaintiffs believe Defendants argument on this claim is so specious it warrants little response. Paragraph 119 alleges that Edwards "was subjected to a hostile environment on the basis of his race," which is alleged elsewhere, including ¶¶ 13a & 122 as "Caucasian." Defendants Motion does not even come close to establishing there are no set of facts that would prove a racially hostile environment, and Plaintiffs cannot find any case law whatsoever, and Defendants fail to cite any case that requires a plaintiff to plead every fact that made his work environment racially hostile. If Edwards was Hispanic or Latino instead of Caucasian, he would have not suffered the hostilities about which he complained to no avail. That much is easily inferred from the factual allegations in the Amended Complaint. That Defendants cannot see it, hardly means it is not there.

Defendants come close but stop short of recognition of the cognizable claim when they argue "the Amended Complaint sets forth no factual basis for equating 'illegal labor' to race, specifically Hispanic or Latino race." (Defs. Motion at 24). Wrong, and to the contrary, ¶ 122 alleges that "Prime disfavored Caucasian Edwards in favor of its Hispanic and Latino employees and did not want to upset

them" (obviously referring to the same Hispanic and Latino employees) mentioned in the same sentence.

If defendants had simply "connected the dots" within the same sentence, the alleged discrimination on the basis of Edwards race is not only explicitly plead; it is otherwise obvious and easily inferred from the allegations pled.

## VI.   PLAINTIFF KEY HAS A VIABLE RETALIATION CLAIM UNDER § 1981

Continuing with their disturbing habit of ignoring Eleventh Circuit precedent, Defendants argue that Plaintiff Key's undeniable participation in this action, in which fellow plaintiffs assert claims of race discrimination under § 1981, is not protected activity on Key's part giving rise to her retaliation claim under § 1981.  Defendants go so far as to argue that even an employee cannot pursue a retaliation claim based on protected conduct of the employee's spouse.  That is contrary to the Eleventh Circuit's decision in Wu v. Thomas, 863 F.2d 1543 (11th Cir. 1989), in which this Circuit recognized Mr. Wu's retaliation claim based on his wife's opposition to allegedly unlawful employment practices. This Eleventh Circuit precedent makes it unnecessary to address the few cases from other jurisdictions Defendants cite.

Moreover, Defendants attempt to re-write the "participation" clause they quote on page 26 of their Motion.  It appears as plain as day that joining as a plaintiff in a case in which co-workers sue under § 1981 is encompassed within the

broad language "participated in any manner in [a] … proceeding" under § 1981. She is participating as a plaintiff in this case, and if that is not "participation," nothing is. Plaintiffs submit that Key's participation as a plaintiff in this action protects her from retaliation in violation of § 1981. In addition, one reasonable inference that can be drawn from her participation as a plaintiff is that she assisted in the investigation that was part of the preparation involved in the filing of this lawsuit, which was also protected activity on her part.

This is not "reloading the shotgun" (Defs. Motion at 27), which is another part of Defendants' hyperbole mantra when their legal arguments are faulty. It is another example of Defendants Prime and Oswald shooting themselves in their own foot. Of the three plaintiffs who worked for Prime when this action was filed, two – Key and Battles – soon had their health insurance benefit terminated, following which their employment was terminated. The third – Edwards – has been subjected to a variety of harassment and "short-shifted." Defendants have "run off" and tried to "run off" their employees who had the audacity to stand-up for their rights. Defendants' mantra is hardly persuasive nor should they be heard to try to hide their unlawful actions behind it.

## VII.   THE COURT HAS SUPPLEMENTAL JURISDICTION OVER KEY'S CLAIM, PLED IN THE ALTERNATIVE, OF RETALIATORY DISCHARGE UNDER ALA. CODE § 25-5-11.1

Defendants completely misread the case of <u>Reed v. The Heil Co.</u>, which is the only case on which they rely in a misguided attempt to support their frivolous argument about jurisdiction over Key's claim under Ala. Code § 25-5-11.1. Contrary to Defendants' argument, <u>Reed</u> simply does not stand for the proposition "federal courts lack jurisdiction over workers' compensation retaliation claims." (Defs. Motion at 28).

Defendants completely miss obvious differences between general jurisdiction from the more limited concept of removal jurisdiction, the latter of which is subject to particular restrictions, one of which was at issue in <u>Reed</u> – the statutory prohibition against removal of actions arising under workers' compensation laws.  This case is not before this Court on removal; it was filed in this Court.  There is no statute or case that stands for the proposition that workers' compensation claims cannot be brought in Federal Court.  That it does not happen often, does not mean it cannot be done.

Key invoked supplemental jurisdiction over her State law claims pursuant to 28 U. S. C. § 1367, (Amended Complaint ¶¶ 1, 103), which Defendants do not mention, probably because it obviously confers jurisdiction over Key's workers' compensation retaliatory discharge claim.

## VIII.  DEFENDANTS' CALL CAREFUL COMPLIANCE WITH RULE 11 IS NO "FISHING EXPEDITION"

The differences between Exhibits A and B, on their face, appear to indicate that Defendants changed the calculations for who gets what amounts via the tip report process.  Exhibit B, showing the "house" taking what that exhibit calls a "service charge," changed the terms of Exhibit A, which shows the "house" taking gratuities.  It is axiomatic that an employer cannot reduce an employees' compensation because the employees complained about violations of the FLSA.

Frankly, how Defendants process and distribute the money they take is not easily accounted for based on the documents available to Plaintiffs.  To the extent Defendants suggest Plaintiffs should go ahead and pursue the matter via a clear-cut separate count, Plaintiffs accept their invitation and will do so here with the Court's permission.  Something changed on the tip report form because of this action, and the change appears on the faces of Exhibits A and B.

To that extent, the Amended Complaint states a claim of retaliation based on the change from Exhibit A to B, even if it is not denominated as a clear-cut separate count with its own Roman Numeral Number and title.

## IX.   EQUITABLE RELIEF AND PUNITIVE DAMAGES

In their Amended Complaint (at p. 49 n3), Plaintiffs candidly acknowledged and advised this Court of Eleventh Circuit precedent contrary to Plaintiffs' position -- that under the current state of law in this Circuit punitive damages are not

available under 29 U. S. C. § 215.   Plaintiffs further advised this Court that Edwards and Key request an award of punitive damages to preserve the issue for further appellate consideration and development of the law in light of a conflict between the Eleventh and Seventh Circuits on the issue.   Of course, here, this Court is bound by the Eleventh Circuit at this point, which does not allow an award of punitive damages under § 215.

As to declaratory judgments, Plaintiffs also concede that under the current state of the law of the Eleventh Circuit, **the FLSA** does not provide for equitable relief for violations of §§ 206-207.   Defendants ignore, and the Eleventh Circuit cases Defendants cite do not address the Declaratory Judgment Act, 28 U.S.C. § 2201, under which a plaintiff who brings a case within a Federal Court's jurisdiction may seek a declaratory judgment, as Plaintiffs do here.

As to injunctive relief, Defendants ignore, and the Eleventh Circuit cases Defendants cite do not address, the All Writs Act, 28 U.S.C. § 1651(a), and Section 2 of Article III of the United States Constitution, which extends "the judicial power … to all cases, in Law and Equity, arising under this Constitution," and the "long recognized power of courts of equity to effectuate their decrees by injunctions," one of the purposes of which is to prevent litigation of matters already litigated.   See Burr & Foreman v. Blair, 470 F. 3d 1019, 1026 (11th Cir. 2006); Wesch v. Fulsom, 6 f. 3d 1465, 1470 (11th Cir. 1993).   Defendants'

argument about "no-equitable relief" strips this Court of its Constitutional, statutory and inherent equitable powers, one of which is to issue equitable relief, which certainly includes injunctions.  Hence, Defendants argument is due to be rejected.

## X.   **CONCLUSION**

The only thing unmanageable about this case is not the Amended Complaint, but the Defendants' willingness to repeatedly and flagrantly violate a variety of laws.  If Defendants do not want to handle all claims in one case addressing all of their violations, they could ask for severance to consider of some claims separately from others.  They have made no such request.

For the foregoing reasons and arguments to be presented at the hearing, Plaintiffs submit Defendants' motion is due to be denied in is entirety (with the sole exception of the claims for punitive damages under 29 U.S.C. § 215, an award of which current Eleventh Circuit precedent does not allow).

Respectfully submitted on this 12th day of February, 2009.

*Barry V. Frederick*
Barry V. Frederick (FRE017)
Counsel for Plaintiffs

OF COUNSEL:

THE FREDERICK FIRM
5409 Trace Ridge Lane
Birmingham, Alabama 35244
(205) 739-0043 phone

(205) 739-0044 fax
Barry@frederickfirm.net

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing was served by filing the same with the Court's electronic filing system on this 16th day of January, 2009 upon the following:

Victoria Jeanne Franklin-Sisson
Jones Walker Waechter Poitevent Carrere & Denegre
Financial Center
505 20th St N Ste 600
Birmingham, AL 35203-4659

Jennifer L Anderson
Jones Walker Waechter Poitevent Carrere & Denegre
8555 United Plaza Boulevard
Baton Rouge, LA 70809

Laurie M Chess
Jones Walker Waechter Poitevent Carrere & Denegre
601 Brickell Key Drive
Miami, FL 33131

Stephen J Haedicke
Jones Walker Waechter Poitevent Carrere & Denegre
201 St. Chareles Avenue
New Orleans, LA 70170

*Barry V. Frederick*
Of Counsel