IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KYLE EDWARDS, et al.,        }
                             }
     Plaintiffs,             }
                             }     CIVIL ACTION NO.
v.                           }     08-AR-1016-S
                             }
PRIME, INC., d/b/a RUTH'S    }
CHRIS STEAK HOUSE, et al.,   }
                             }
     Defendants.             }

**MEMORANDUM OPINION**

In an amended complaint, Kyle Edwards ("Edwards"), Diane George ("George"), Ryan Cade ("Cade"), Terrence Forman ("Forman"), Kameron Battles ("Battles"), Kelly Key ("Key"), and Jimmy D. Lincoln ("Lincoln"), individually, collectively, and on behalf of a putative class of similarly situated employees (collectively "plaintiffs"), sue their employer or former employer, Prime, Inc., d/b/a Ruth's Chris Steak House ("Prime"). They also name as defendants Markham Oswald ("Oswald"), owner of Prime, and Ruth's Hospitality Group ("Ruth's"), franchisor of Ruth's Chris Steak House restaurants. They leave out any reference to Edwards's individual claim against Jesus Milano, against whom Edwards has obtained an entry of default, and no longer attempt to state a claim against all of Ruth's's franchisees as a class.

On December 11, 2008, the court granted in part and denied in part defendants' motion to dismiss plaintiffs' original complaint.

1

The court orally and in writing gave plaintiffs pointed hints about what should and should not be included in an amended complaint. As to the claims dismissed without prejudice, the court granted plaintiffs the right to amend but suggested:

> Plaintiffs would do well to use their opportunity to amend wisely. To the extent plaintiffs cannot repair counts to state plausible claims for relief, plaintiffs should acknowledge as much by not undertaking the impossible and not attempting to reload the kitchen sink.

(Op. p. 29). In response, plaintiffs filed an amended complaint on January 16, 2008. They failed to heed the court's advice. Although the court did not order plaintiffs to acknowledge their inability to repair certain counts, it strongly recommended that plaintiffs do so and thought it made clear that plaintiffs would have to plead additional facts in order to withstand another motion to dismiss challenging several of plaintiffs' liability theories. In refiling the RICO claim, the intentional interference claim, and the conversion claim, plaintiffs simply ignored the court's order and opinion of December 11, 2008. The court should dismiss the counts containing these liability theories for this reason alone. *See Equity Lifestyle Prop., Inc., v. Florida Mowing & Landscape Serv., Inc.*, -- F.3d --, 2009 WL 250601 (11th Cir. 2009), in which the Eleventh Circuit very recently held: (1) "[Plaintiff] failed to follow the district court's explicit directions in framing its third amended complaint"; (2)"A district court has inherent authority to manage its own docket 'so as to achieve the orderly

and expeditious disposition of cases.'"; and (3) "The court may dismiss a claim if the plaintiff fails to . . . comply with a court order.")(internal citations omitted).

Before the court is the anticipated motion of defendants, Prime, Ruth's, and Oswald (collectively "defendants"), to dismiss parts of the amended complaint.[1] Plaintiffs, defendants and the court were all unaware of *Equity Lifestyle* when the court, on February 13, 2009, heard oral argument. The court therefore will not rely upon *Equity Lifestyle*. For the reasons that follow, defendants' motion to dismiss will be granted in part and denied in part.

### *Claims at Issue*

Defendants move to dismiss the following claims: the RICO claim (Count I); the collective FLSA claims (Counts II-VI), but only to the extent that plaintiffs request injunctive and declaratory relief; the claim of interference with business and contractual relations (Count VII); the conversion claim (Count VIII); Edwards's individual claim of discrimination under § 1981 against Prime (Count XII); Edwards's claim of retaliation under the FLSA (Count XIII), but only to the extent that he says that he may

---

[1] For purposes of a Rule 12(b)(6) motion, the court takes as true the facts alleged in the complaint and draws all reasonable inferences in plaintiffs' favor. *See Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). The complaint's allegations must plausibly suggest a right to relief, raising that right "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient. *Id.*

later undertake to bring a FLSA retaliation claim on behalf of himself and those similarly situated; Key's individual claim of retaliation against Prime (Count XIV); Key's individual claim for workers' compensation retaliation against Prime (Count XV); and Key's and Edwards's individual claims for punitive damages (Counts XIII and XIV).

Defendants concede that at least some of plaintiffs' claims survive Rule 12(b)(6) scrutiny. Consistent with this concession, defendants do not move to dismiss the following claims: the FLSA claims (Counts II, III, IV, V, VI), with the exception of certain remedies therein requested; George's individual claim of race discrimination against Prime (Count IX); Battles's individual claim of race discrimination against Prime (Count X); Battles's individual claim of retaliation against Prime and Oswald (Count XI); and Edwards's claim of retaliation under the FLSA (Count XIII)(except to the extent discussed above). How, or if, these myriad and disjointed claims can be tried together to one jury at one time is a question not yet asked, much less answered.

### *Facts*

Plaintiffs' amended complaint differs very little on a substantive level from the original complaint. For this reason, the court will not reiterate what it said on December 11, 2008. Instead, the court simply directs interested parties to its earlier opinion. Inconsequentially, the amended complaint adds two

4

plaintiffs, Forman and Lincoln. Forman is a black male and United States citizen who worked for Prime as a server. He brings no claims peculiar to himself. Lincoln is a white male and United States citizen who worked for Prime in a variety of positions, including server. He brings no claims peculiar to himself.

The following claims have been added: Key's individual claims of retaliation for her filing of this suit (Count XIV), and of workers' compensation retaliation (Count XV), both against Prime. In support of the first of these additional claims, Key alleges that, within weeks after this action was filed, Prime terminated her health care coverage and employment. In support of the second additional claim, Key alleges that she suffered injuries from an on-the-job fall while working for Prime and that she thereafter filed a claim for workers' compensation benefits. Prime reacted by contending that she did not suffer an injury on the job. Prime's spokesperson failed timely to prepare a report on Key's injuries. After the workers' compensation insurance carrier determined that Key did, in fact, suffer the complained of injuries on the job, and that the injuries were compensable, Prime terminated Key's employment. Key pleads Count XV for retaliation in the alternative to Count XIV for retaliation.

The amended complaint also contains what purports to be a **potential** FLSA retaliation claim by Edwards on behalf of himself and other similarly-situated employees. In presenting his

individual claim, Edwards now contends that a newly implemented "tip report"[2] **may** have altered the basis on which he and others are paid. **If** there was such a change and **if** it decreases plaintiffs' pay, such would constitute retaliation made unlawful by the FLSA, according to the hypothesis stated in the amended complaint. Edwards does not present this potential claim in a separate count. Instead, he expresses the hope that discovery will prove the legitimacy of such a claim. The court is unaware of any pleading rule that allows a plaintiff to sue based on his hope that some basis for the claim will be discovered.

### *Analysis*

#### *Plaintiffs' RICO claim (Count I)*

Plaintiffs' first and primary claim remains their claim that defendants engaged in racketeering activity in violation of 18 U.S.C. § 1961(1)(f), which defines "racketeering activity" to include any act indictable under the Immigration and Nationality Act, section 274, that is, if the proscribed conduct was committed for financial gain. 18 U.S.C. § 1961(1)(f). Specifically, plaintiffs allege repeated violations by defendants of 8 U.S.C. § 1324(a)(1)(A)(iii); 8 U.S.C. § 1324(a)(1)(A)(iv); 8 U.S.C. § 1324(a)(1)(A)(v)(I)-(II); and 8 U.S.C. § 1324(a)(3)(a). Plaintiffs did heed the court's earlier warning to the extent of refraining

---

[2] A tip report is used by banquet servers at Ruth's Chris to report their tips to defendant Prime. The tip report once read, "LessHouse 5%: 20% Gratuity x .25 =," and now reads, "LessHouse 5%: 20% Service Charge x .25 =." (Pls.'s Ex. B & C).

from repleading the earlier alleged violation of 8 U.S.C. § 1324a(1)-(2). They have chosen, instead, to take a side-step and to plead for the first time a violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I)-(II). Just as in their motion that challenged the original RICO count, defendants again insist that plaintiffs have failed to plead a "racketeering activity." Further, defendants assert that the new Count I is no more than a thinly disguised restatement of the original Count I, the same allegations that this court has already found insufficient. After reflection, the court agrees.

Plaintiffs now depend entirely upon their allegation that defendants paid certain employees "in cash," urging the court to equate this act with the acts of "housing," "transporting," "clothing" and "feeding," recognized in other cases as facts probative of proscribed racketeering activity. The court necessarily addresses this issue. Applying presently binding case law, the court finds plaintiffs' argument unpersuasive. During oral argument, plaintiffs cited two cases in support of their position: *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277 (11th Cir. 2006), and *United States v. Tipton*, 518 F.3d 591 (8th Cir. 2008). In *Williams*, in which the Eleventh Circuit recognized a RICO violation, plaintiffs alleged that Mohawk employed individuals it knew to be illegal aliens, knowingly accepted false documents from them, allowed the "recycling" of illegal aliens, employed

recruiters actually to recruit illegal aliens, encouraged illegal aliens considering a return to their country of origin to remain working at Mohawk, destroyed eligibility documents in an effort to conceal illegal employees, traveled to the border to recruit illegal aliens, transported illegal aliens from the border to North Georgia where they could work for Mohawk, and assisted illegal employees in hiding and evading detection during police raids. *See Williams,* 04-CV-03 (Compl. pp. 5-12); *see also Williams*, 465 F.3d 1281-82 (focusing on Mohawk's travel to the border, transport of illegal aliens, provisions for housing, and aid to illegal aliens to evade detection by law enforcement). In *Tipton*, which was a criminal case, the United States proved that Tipton granted illegal aliens employment, provided them a place to live, provided them with daily transportation, paid them in cash, and maintained counterfeit immigration papers for each illegal alien. *See Tipton*, 518 F.3d at 595. Neither of these cases contains an explanation of which facts, or collection of facts, controlled the outcome. Neither case held that paying cash to an illegal alien, in and of itself, constitutes a criminal act or a RICO offense.

The court does not deny that similarities exist between the instant case and the cases cited. However, the court cannot ignore the marked differences. For instance, Prime did not provide housing, something that seems to be crucial to the concept of "harboring." *See United States v. Zheng*, 306 F.3d 1080, 1087 (11th

Cir. 2002); *United States v. Singh*, 261 F.3d 530, 533 (5th Cir. 2001). To the contrary, *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295 (D.N.J. 2005), holds that recklessly disregarding the illegal status of employees does not equate to "concealing," "harboring," or "shielding" illegal aliens from detection. No binding decision tells this court whether or not the particular facts here alleged by plaintiffs are on one side or the other side of RICO's proscriptions. The court is dealing with shades of gray. The court cannot even be sure from the allegations in Count I what constitute the two or more predicate acts that are required by RICO. Is it paying illegal aliens in cash on two occasions? The facts in this case,[3] while similar in kind to those in the cases cited by plaintiffs, are not sufficiently similar in degree to compel a finding that plaintiffs' amended complaint supports a right to relief under RICO. If the Eleventh Circuit disagrees and will more liberally than this court draw the line as to what claims that in any way involve the employment of illegal aliens are valid RICO claims, it, of course, can do so, and if it does so this court's feelings will not be hurt. Accordingly, the court will make the requisite Rule 54(b) finding in its accompanying order.

Plaintiffs did include one new RICO allegation in their amended complaint, namely, that defendants violated 8 U.S.C. §

---

[3] Strangely, the one allegation from the original complaint that the court found to be close to stating a violation of one of the relevant statutes – the allegation that defendants alerted workers to an INS raid – is not found in plaintiffs' amended complaint.

1324(a)(1)(A)(v)(I)-(II). However, plaintiffs' failure to describe any substantive violations of 8 U.S.C. § 1324 dooms the claim that defendants conspired to violate RICO, as does their failure properly to allege the elements of a conspiracy. Conclusory pleading like this is no longer tolerated. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

### *Plaintiffs' demand for injunctive and declaratory relief*

All plaintiffs, with the exception of George, ("FLSA plaintiffs"), bring collective claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* Defendants challenge the viability of plaintiffs' FLSA claims only to the extent that plaintiffs request injunctive and declaratory relief, pointing out that the remedial provisions in the FLSA do not include equitable relief.

Plaintiffs concede that under the current state of Eleventh Circuit law the FLSA does not provide equitable relief for violations of 29 U.S.C. §§ 206, 207. *See Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1335 (11th Cir. 2002); *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 930-31 (11th Cir. 2000). The provisions of 29 U.S.C. § 216(b) make clear that if an employer is found to have violated one of the other FLSA statutes, it "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated

damages." The FLSA claims will therefore be dismissed to the extent that they seek injunctive and declaratory relief.[4]

### *Plaintiffs' claims of intentional interference & conversion*

In Counts VII and VIII, FLSA plaintiffs allege that the conduct of Prime and Oswald tortiously interfered with, and continues to interfere with, FLSA plaintiffs' business and contractual relations with patrons of Prime. Further, they allege that the FLSA defendants' said conduct constituted, and continues to constitute, conversion of monies rightfully theirs. Prime and Oswald say that such state law claims are preempted by the FLSA.

In its December 11, 2008, opinion, the court noted that it has been "consistently held that 29 U.S.C. § 216(b) is the exclusive remedy for enforcing rights created under the FLSA." *See Morrow v. Green Tree Serv., LLC*, 360 F. Supp. 2d 1246, 1252 (M.D. Ala. 2005). Common law claims based on the same operative facts and circumstances as a FLSA claim are preempted, especially where they

---

[4] Plaintiffs do not concede in full and move forward. Instead, they cite the Declaratory Judgment Act, 28 U.S.C. § 2201, the All Writs Act, 28 U.S.C. § 1651(A), and Section 2, Article III, of the United States Constitution in support of their argument that the court could award equitable remedies no matter the statutory content. They are misguided in doing so. Where a statute, such as the FLSA, provides a remedy for a specific type of case, this remedy generally must be followed; under these circumstances, a declaratory judgment will not be granted *unless a showing of special circumstances be made. See* 26 C.J.S. Declaratory Judgments § 16; *Katzenbach v. McClung*, 379 U.S. 294, 379-380 (1964). Plaintiffs fail to make this showing. As for injunctive relief, it should be noted that "the All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Burr & Forman v. Blair*, 470 F. 3d 1019, 1026 (11th Cir. 2006)(citation omitted). Plaintiffs do not persuade the court that it can, or should, in this instance, allow for equitable remedies in the face of Eleventh Circuit precedent holding that none are available.

differ only in regard to remedy. *See Alexander v. Vesta Ins. Group, Inc.*, 147 F. Supp. 2d 1223, 1240-41 (N.D. Ala. 2001). "As a matter of law, [a] plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state law claims in addition to the FLSA claim." *Tombrello v. USX Corp.*, 763 F. Supp. 541, 545 (N.D. Ala. 1991). Plaintiffs did not take the court's hint.

Those plaintiffs who rely on the FLSA correctly point out that the Eleventh Circuit does not preempt **all** state common law claims. *See Freeman v. City of Mobile, Ala.*, 146 F.3d 1292, 1298 (11th Cir. 1998)("[T]he FLSA does not preempt state law contract provisions that are **more generous** than the FLSA demands.")(emphasis added); *Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1348 (11th Cir. 1994)("[T]he district court erred in holding that the FLSA pre-empts a state law contractual claim that seeks to recover wages for time that is compensable under the contract **though not under the FLSA**.")(emphasis added). However, the court again points out that the complaint provides no reason to believe that Alabama interference and/or conversion claims provide any greater relief than the FLSA can provide. Plaintiffs argue that both claims stand "**regardless** of whether Defendants otherwise complied with the FLSA in compensating Plaintiffs." (Am. Compl. p. 39)(emphasis in original). Plaintiffs miss the point that the court felt it had already made, the same point made by the cases cited by plaintiffs

12

themselves. Whether a state law tort claim is preempted by FLSA claims depends on the nature of the state-law claim, namely, whether the state law claim provides **greater** rights than the FLSA claims. These state law claims do not provide greater rights, even when viewed in the light most favorable to FLSA plaintiffs.

### *Edwards's individual claim of discrimination*

Edwards separately claims that he was subjected to a hostile work environment on the basis of his race in violation of 42 U.S.C. § 1981. As his "factual" support for this, he loosely alleges that "Prime disfavored Caucasian Edwards in favor of its Hispanic and Latino employees and did not want to upset them out of fear of disrupting its supply of cheap illegal labor." (Am. Compl. p. 44). This reflects an ignorance of the pleading lesson recently taught in *Twombly*. Prime correctly notes that § 1981 only authorizes claims founded on race discrimination, whereas Edwards complains merely of favoritism or the protection of allegedly illegal aliens, conduct that does not constitute a violation of § 1981.

Even when viewed in the light most favorable to Edwards, the allegations fail to state a claim of race discrimination under § 1981. Edwards may have meant to claim discrimination based on his membership in the white race, but the allegations only suggest something akin to it, and not a hostile work environment that is intolerable as a result of the employer's deferential treatment of Latinos. The fact, if proven, that Prime favored Latino workers,

does not create a § 1981 claim of **hostile work environment**. Edwards's conclusory allegations only describe, albeit ambiguously, discrimination based on employment status, not race, and certainly do not meet the pleading standards for a racially hostile environment. The claim, even if it passed *Twombly* muster, is not cognizable under § 1981.

### *Edwards's potential FMLA-retaliation collective action*

In Count XIII, Edwards claims individual retaliation under the FLSA. In the same count, he insinuates a potential FMLA-retaliation collective action if and when he discovers that a change in the "tip report" altered the basis on which employees, including himself, were paid. Defendants have not challenged this **potential** claim in their motion, although in their supporting brief they deny the present or future existence of such a claim. Edwards responds without noting defendants' oversight. Thus, because each side had, and took, the opportunity to argue this issue, the court will address it.

Defendants claim that the admission by plaintiffs that they do not know whether any revision in the "tip report" has any factual basis is an admission that they do not satisfy Rule 8. As a result, defendants argue that this putative claim is subject to dismissal, that is, if it is a claim at all. If it is only a **potential** or a **possible** claim, plaintiffs are not entitled to pursue discovery on it or to seek relief based on it. This court's jurisdiction is

limited to existing cases or controversies. It does not cover irrelevant or hypothetical issues. With that said, Edwards, in response to defendants' motion, informally requests the court's permission to pursue the matter in a third amendment. As it now stands, Edwards does not aver facts to support such a claim. The court will entertain a formal motion for leave to amend to add such a claim if and when Edwards can allege facts to justify such a claim under the requirements of Rule 11 and *Twombly.*

### *Key's individual claim for retaliation*

In Count XIV of the amended complaint, Key alleges that within a few weeks after this action was filed Prime terminated her health insurance coverage and her employment, both in retaliation for her filing this action, a violation of 29 U.S.C. § 215(a)(3), and in retaliation for her joining in this action with other plaintiffs who asserted claims of race discrimination, a violation of 42 U.S.C. § 1981. At this juncture, Prime only challenges Key's retaliation claim brought pursuant to 42 U.S.C. § 1981, arguing that there are no allegations to suggest that Key has involved herself in any way in any of the § 1981 claims by co-plaintiffs in the complaint.

The "participation clause" of section 704(a) of Title VII of the Civil Rights Act of 1962, 42 U.S.C. § 2000e-3(a), makes it unlawful for an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated

**in any manner** in an investigation, proceeding, or hearing under this subchapter." (emphasis added). There is no clear precedent on the issue of whether merely having one's name on a complaint in which co-plaintiffs but not this plaintiff allege § 1981 violations is participation in a proceeding for purposes of § 2000e-3(a). The court will not attempt to answer this question now. Instead, the court will allow this claim to move forward in anticipation that discovery will reveal more clearly Key's level of participation, if any, as to the § 1981 claims of her co-plaintiffs. This information may aid in making the highly-factual determination of whether Key's conduct is protected by § 2000e-3(a). For now, the court will draw in Key's favor the reasonable inference that her participation in this action was a protected activity, upon which Key bears the burden of proof. Her claim of retaliation for her FLSA activity is, at this time, not the subject of a Rule 12(b)(6) motion.

### *Key's individual claim of workers' compensation retaliation*

In the alternative to the claims of retaliation found in Count XIV, Key asserts a claim of workers' compensation retaliation pursuant to Ala. Code § 25-5-11.1. In support of this allegation, Key claims that Prime showed resistence toward her workers' compensation claim and eventually fired her as a result of her successful pursuit of unemployment benefits.

Prime contends that this claim must be dismissed because federal courts lack subject matter jurisdiction over workers'

16

compensation retaliation claims, citing *Reed v. The Heil Co.*, 206 F.3d 1055, 1060-61 (11th Cir. 2000). Prime's reliance on *Reed* is misplaced. In *Reed*, the Eleventh Circuit noted that "28 U.S.C. § 1445(c) bars the **removal** to federal court of claims arising under state worker's compensation laws." *Id.* at 1057 (emphasis added). As a result, it held that the district court lacked jurisdiction to entertain plaintiff's retaliatory discharge claim, which was brought pursuant to Alabama's statute proscribing retaliation for the filing of a workers' compensation claim, because that claim arose under Alabama's workers' compensation laws. *Id.* Key's claim of workers' compensation retaliation did not arrive in this court by removal, and Prime fails to cite a statute or case standing for the proposition that this court cannot exercise supplemental jurisdiction over workers' compensation claims brought originally in this court if joined with a claim or claims over which this court has jurisdiction. In light of this absence of binding precedent, and of the fact that other district courts in the Eleventh Circuit have entertained claims similar to the one presented here, Prime's motion to dismiss Count XV will be denied.

***Plaintiffs' claims for punitive damages pursuant to 29 U.S.C. § 215***

In Counts XIII and XIV, Edwards and Key seek punitive damages under 29 U.S.C. § 215. They acknowledge in the amended complaint itself that "the current state of the law in the Eleventh Circuit does not allow for an award of punitive damages under 29 U.S.C. §

215," but request punitive damages anyway in order to "preserve the matter for further appellate review and developments in the appellate courts." (Am. Compl. p. 49 n.3). Key's and Edwards's claims for punitive damages pursuant to 29 U.S.C. § 215 will be dismissed on defendants' motion.

## CONCLUSION

For the above-stated reasons, defendants' partial motion to dismiss will be granted in part and denied in part by separate order.

**DONE** this 4th day of March, 2009.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE