```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION

KYLE EDWARDS, et al.,            | CASE NO. 2:08-cv-01016-WMA
                                 |
         Plaintiffs,             |
                                 |
v.                               |
                                 | HON. WILLIAM M. ACKER, JR.
PRIME, INC., d/b/a RUTH'S CHRIS  |
STEAK HOUSE, et al.,             | Birmingham, Alabama
                                 |
         Defendants.             | February 13, 2009
```

**FOR THE PLAINTIFFS:**   Barry V. Frederick
                          THE FREDERICK FIRM
                          5409 Trace Ridge Lane
                          Hoover, Alabama 35244
                          205-739-0043
                          Email: barry@frederickfirm.net

**FOR THE PRIME**         Jennifer L. Anderson
**DEFENDANTS:**           JONES WALKER WAECHTER POITEVENT
                             CARRERE & DENEGRE
                          8555 United Plaza Boulevard
                          Baton Rouge, Louisiana 70809
                          225-248-2040
                          Email: janderson@joneswalker.com

                          Laurie M. Chess
                          JONES WALKER WAECHTER POITEVENT
                             CARRERE & DENEGRE LLP
                          601 Brickell Key Drive, Suite 500
                          Miami, Florida 33131
                          305-679-5728
                          Email: lchess@joneswalker.com

                          Victoria J. Franklin-Sisson
                          JONES WALKER WAECHTER POITEVENT
                             CARRERE & DENEGRE LLP
                          505 20th Street North, Suite 600
                          Birmingham, Alabama 35203
                          205-226-5209
                          Email: vsisson@joneswalker.com

**REPORTED BY:**          Sabrina Lewis, CRR, U.S. Court Reporter
                          1729 Fifth Avenue North
                          Birmingham, Alabama 35203
                          205-278-2065

1      THE COURT:  Edwards against Prime, Inc., doing business
2 as Ruth's Chris Steak House, and others.
3      This is the case that precipitated my notice to the clerk
4 not to assign any more Rule 23 cases.  So that I won't be having
5 any more.  But this one got by the instruction, filed before
6 that.  And it is a putative class action of various and sundry
7 sorts with classes that overlap and have different kinds of
8 claims if they were certified.  And the defendants, although some
9 of the claims are only against one or more and not all and some
10 are, I guess, against all -- I'm not sure about that.  Then there
11 were a deluge of filings yesterday.  Nothing filed in this case
12 yesterday has been looked at.  So I'm ignorant of everything that
13 was said at the last minute.  And y'all may want to tell me what
14 it is, or you may rely on me just to read it.
15      I earlier granted a motion to dismiss partially but granted
16 the plaintiffs leave to amend.  But I suggested in my order that
17 they should be careful in it because I didn't see any likelihood
18 of being able to breathe life into some of the claims.  That's
19 not the words I used, but that's the gist of it.
20      At the time that the order was entered and at the time the
21 amended complaint was filed, leave which had already been granted
22 by the earlier order, one defendant, Jesus Molina, who the
23 plaintiff is not sure exists by that name, had ostensibly been
24 served the original complaint, had not responded to it, and an
25 entry of default had been entered against him.  So that as of

now, Jesus Molina has an entry of default against him as to the original complaint insofar as it purported to state a claim against him.  I guess -- I don't believe that he was a subject of the RICO count, let's say.  But to the extent relief was sought against him in the original complaint -- the only complaint that was served on him -- the plaintiff is entitled to the relief it sought except for an amount of money if amount of money is to be awarded.

The amended complaint, as I see it, there's been no attempt to serve Jesus Molina because he wasn't represented by a lawyer and no service on any lawyer was required.  But the amended complaint has been served on the lawyer or lawyers who represent the other defendants.  And Victoria Franklin-Sisson?

MS. FRANKLIN-SISSON:  Yes, your Honor.

THE COURT:  And Laurie Chess?

MS. CHESS:  Yes, your Honor.

THE COURT:  And Jennifer Anderson?

MS. ANDERSON:  Yes, your Honor.

THE COURT:  Do all of you lawyers represent all of the defendants on all of the claims?  Or have you in any way tried to divide it up?  Because the claims are different.  You're all representing all defendants on all the claims; is that my understanding?

MS. ANDERSON:  Yes, your Honor, that is correct.

THE COURT:  I don't know whether now or somewhere down

1   the stream, if this case keeps swimming down or up stream as the
2   case may be, that there will be any conflicts between you as with
3   respect to different defendants.  But we're not going to get to
4   that right now.  We're just talking about where we find ourselves
5   at the moment.
6        The defendants are saying -- and I think with -- I think
7   you're both being maybe more rancorous than I had been, although
8   I would confess that there was a little rancor in what I've said,
9   though, thus far.  But you're both taking me up on it, you might
10  say.  But the defendants are saying that the amended complaint
11  virtually duplicates the old complaint, I guess except for the
12  fact or one of the facts that the amended complaint adds two
13  plaintiffs, Terrence Forman and Jimmy Lincoln.  They appear in it
14  as putative representatives of a putative class.  And in the body
15  of the amended complaint, they're described as employees and what
16  roles they play in the operation of that restaurant.
17       When I looked at this case earlier and was studying it, the
18  plaintiffs at that time had not filed any written response to the
19  defendants' refiled motion to dismiss or partially dismiss.  But
20  I notice in this morning's stack that the plaintiffs have
21  responded.  And I only read the first paragraph, which was
22  equally rancorous in relation to the motion to dismiss, so that
23  you all are competing nicely there.  I congratulate you both on
24  your rancorousness.
25       But that's all I read.  I just read enough to know that

there was a serious dispute between you as to whether the complaint as it now reads states a claim.

But the fact that the motion to dismiss is called a partial motion to dismiss contains the necessary concession, despite the rancorousness, that the defendants concede that some of the claims survive Rule 12(b)(6), because that's what a motion to dismiss is.  Which means that there are certain claims that the defendants say to proceed to the next stage:  to an answer, to discovery, to a dispositive ruling.  And I'm trying to figure out what those are, because I don't want to conduct an argument on or spend any time on deciding whether or not particular claims -- and there are a lot of them in here.  And that's one of the complaints I made with it and why I made that surly remark about the kitchen sink which triggered -- ticked y'all off apparently.

I have assigned one of my law clerks, and I think she's done an exemplary job of it, for me, to try to do what I didn't want to take the time to do and didn't take the time to do.  I was too busy going to Tuscaloosa to listen to Paul Greene lecture me on what magistrate judges do around here and other places.  And he's in here listening to me now.

You weren't in here when I talked about our visit to Tuscaloosa, were you?  Did somebody go down and get you and bring you up here?

Well, one of the maybe reasons that triggered my instruction to the clerk not to send any more Rule 23 cases, with respect to

1  the Fair Labor Standards Act, this is a collective action.  So
2  that would get by the screen anyway.  But you've got Rule 23
3  stuff all mixed up, which is -- again, back to Bob Wiggins, I
4  told him it's apples and oranges and I don't know whether I want
5  to fool with both of them in the same case.  But you've got them
6  here, and there weren't any here to start with, 23.
7       One thing I saw in here and I see now, before y'all talk
8  back at me, the members of that class who are complaining about
9  not being paid the hourly rate that the Fair Labor Standards Act
10 requires complain as part of that, that there was a pooling
11 arrangement for tips at the Chris -- Ruth Chris.  Whether or not
12 that allegation goes to Ruth's Chris in Montana or not I'm not
13 sure yet.  But we're talking about the Ruth Chris within my --
14 that I might go to and recuse as a result of getting bad or good
15 service.
16      But if the pooling arrangement -- let's say over here on the
17 South Side that the pooling arrangement does not meet the
18 standards of the Fair Labor Standards Act.  If we got to the
19 point, if we ever get to the point or any other judge gets to the
20 point, where you're critiquing that particular pooling
21 arrangement to determine how to slice the pie in the right way to
22 get a particular waiter or group of waiters to write them out,
23 write the number of hours that they waited on tables, and carve
24 out those portions of the pool that were paid to somebody not
25 entitled to them -- because they're not entitled to them under

either the pooling arrangement there or somewhere else.

Now, I'm going to read you something that I came up with here that might or might not be appropriate or be anything to worry about. But I worry about everything, as I think you all have figured out by now.

It's a case of 1990 from the Court of Appeals of California. And it says, "An employer-mandated tip-pooling policy is one of common sense and fairness and protects the public, the employees, and the employer."

And I don't know whether that's a good public policy in California or represents the law of the Fair Labor Standards Act. But you would have to, if you get to tip-pooling, to determine how much of it somebody is entitled to or whether you wipe it out entirely and just do away with it as a kind of a piece of equitable relief that you throw out there when you award the correct amounts to the people that are in the class. I'm not sure.

The defendants got, I guess, the answer or the response to their motion for partial dismissal yesterday or this morning like I did. I'd told you that I've had my law clerk carefully look at the complaint. She didn't have the opportunity to see what the plaintiff said yesterday any more than I did. So there may be some supplementary poking around to be done. But she has attempted -- and I think you did a good job at it -- of distinguishing between the claims that the defendants concede

1  state a claim and those that don't.
2       I know that there's some in both categories.  She knows that
3  there's some in both categories.  She thinks she knows and has
4  told me which category each claim is in.
5       When we tell you, if we do, or when we do, which ones we
6  think each claim is in and what we're going to do about it, you
7  may or may not agree with it.  But I think now would be a good
8  time for the defendants to tell me or just reiterate a minute
9  which claims you think survive Rule 12(b)(6).
10      And take good notes over there, Crystal.
11          MS. ANDERSON:  Certainly, your Honor.  Because some
12 fall both in and out of those two categories you described and to
13 be certain we're clear, I'm also going to tell you if there are
14 some that I think are totally in one category or not.
15          THE COURT:  I think maybe that would be where you
16 start, telling me which ones are so off the wall that I can wipe
17 them out permanently, not just temporarily.
18          MS. ANDERSON:  It is our contention that none of the
19 RICO claims survive.  And that would take care of and include a
20 Rule 23 class claim.
21      With respect --
22          THE COURT:  Is the RICO claim the only one with a 23
23 request?
24          MS. ANDERSON:  Yes, your Honor.
25      With respect to the Fair Labor Standards Act claims, we have

1  not made those the subject of the motion for partial dismissal
2  with the exception of certain aspects of relief that have been
3  requested that we maintain are not available under the FLSA.  And
4  those forms of relief are declaratory and injunctive relief for
5  wage and hour claims and then also punitive damages for wage and
6  hour claims.  I'm sorry.  Punitive damages for retaliation
7  claims.  Punitive damages are not requested for wage and hour
8  violations under the FLSA.
9        THE COURT:  Are you resisting the collective aspect of
10 the Fair Labor Standards Act?
11       MS. ANDERSON:  Not at this time.  We -- obviously, if
12 there is a motion to certify and approve collective action
13 noticed to putative group members, we would challenge it at that
14 time.  We did feel that pleading it wasn't adequate, but we did
15 not raise it at this time.
16       THE COURT:  Well, it occurs to me that on the face of
17 the complaint, there appears to be enough distinction between
18 some of the plaintiffs to stand in the way of similarity of the
19 sort that would invite a collective relief.
20       MS. ANDERSON:  I agree --
21       THE COURT:  But you're putting that off for a moment?
22       MS. ANDERSON:  Yes.  The majority of the cases in
23 courts deal with that at the certification stage.  And we felt
24 like there was enough that we put in front of the Court in the
25 motion to dismiss that that would be better dealt with

```
 1   separately.
 2        The next issue is -- and I believe, your Honor, this one may
 3   be resolved.  We had challenged the sufficiency of pleading
 4   claimed against unspecified franchisees.  I do believe I
 5   understand the opposition --
 6             THE COURT:  I think he's not doing that any more.
 7             MS. ANDERSON:  Correct.  So that one is off the table.
 8        We are challenging the pleading of the --
 9             THE COURT:  Do you think he's any longer attempting to
10   state a -- to create a defendant class of any kind?  He still
11   wants a plaintiffs class, plaintiffs RICO class.  But does he
12   want, like he did before, a defendants RICO class or any other
13   kind of defendants class?
14             MS. ANDERSON:  I did not see that or interpret the
15   amended complaint to ask for that.
16             THE COURT:  That's not in the amended complaint.  So if
17   it's identical in other respects, that's not one of them?
18             MS. ANDERSON:  Correct.
19             THE COURT:  All right.
20             MS. ANDERSON:  The next claim that we challenge in
21   terms of sufficiency of pleading is intentional interference with
22   business and contractual relations.
23             THE COURT:  And that's an Alabama claim?
24             MS. ANDERSON:  That's one of the state law claims, yes,
25   sir.
```

1            THE COURT:  And so that there is no suggestion of a
2   putative class to be created to pursue that?
3            MS. ANDERSON:  That is a --
4            THE COURT:  That's your understanding?  Your
5   understanding is -- we're back to -- that, I guess, is
6   repetitive.  But your understanding is the only putative class
7   that plaintiff seeks to create and represent plaintiffs is the
8   RICO.  So that if the RICO went out, so would the 23.  That's
9   what you've just said.  And Mr. Frederick is going to have a
10  chance to respond to that in a minute.
11           MS. ANDERSON:  That claim as I read the amended
12  complaint is not asserted on a collective or class basis, your
13  Honor.
14           THE COURT:  Okay.
15           MS. ANDERSON:  But all of the FLSA plaintiffs do assert
16  it.
17       The next claim, your Honor, that we challenge is the
18  conversion claim.  And that's another state law tort claim
19  similar -- our argument is -- similar to the intentional
20  interference claim.
21           THE COURT:  And all of those defenses and criticisms of
22  the original complaint are the same you're making now?
23           MS. ANDERSON:  They are the same, yes.
24           THE COURT:  They're the same claims and you've
25  criticized them then and I agreed with you then at least to the

1  extent I've expressed myself.  And you're reasserting them, and I
2  agree with you that they're in many respects the same.
3          MS. ANDERSON:  That's correct.
4          THE COURT:  Same complaint, same claim, same criticism.
5          MS. ANDERSON:  That's correct, your Honor.
6      The next claim is actually a new claim that's asserted on
7  behalf of Kyle Edwards, who was originally a plaintiff in the
8  complaint, the lead plaintiff.  And it's a Section 1981 hostile
9  work environment claim purportedly based on race.  And we're
10 challenging the sufficiency of the pleading of that new claim.
11         THE COURT:  I remember your making that point.  I
12 haven't read his response to it.  That would be -- he is in the
13 putative class and the lead plaintiff in it who seeks to
14 represent the FLSA people in the collective action.  And I guess
15 he would also be in the RICO 23 if there was a RICO?
16         MS. ANDERSON:  Correct.
17         THE COURT:  And now he wants to add himself singly as a
18 1981 claim.
19         MS. ANDERSON:  Yes, sir.
20         THE COURT:  And does he say in there his race?  Does he
21 assert what his race is in the amended complaint?
22         MS. ANDERSON:  He does.  In the amended complaint, he
23 does allege that his race is Caucasian.
24         THE COURT:  All right.  Back to RICO, because that
25 triggers, obviously -- I say obviously.  I think from reading the

1   complaint, the original complaint and the amended complaint, that
2   the genesis of the complaints of all the named plaintiffs is that
3   they're the subject or victims of some kind of mistreatment
4   occasioned by the fact that there are a number of or a large
5   number of Mexican-Americans, legal or unlegal, that are getting
6   better treatment for whatever reasons.  And there are a lot of
7   reasons that are asserted here.  Which would suggest that
8   Mr. Kyle -- Mr. Edwards, who makes a 1981 claim, is saying that
9   as a Caucasian, he's the victim, which we allow 1981 protection
10  if he's a Caucasian and for that reason is getting mistreated in
11  the workplace.  1981 is not limited to races -- particular races.
12  It covers the waterfront with respect to race discrimination.
13       The big question I have is not whether -- and I haven't
14  looked at that terribly to see if his claim meets the standard of
15  stating a 1981 claim standing alone.  By filing a 1981 claim,
16  that tells me he hasn't filed an EEOC claim.
17            MS. ANDERSON:  Correct.
18            THE COURT:  We don't know, for instance, how long he's
19  been the victim of discrimination and whether the two-year
20  statute's run on him.  But with the Ledbetter rule, I don't know
21  whether that's worth anything anymore.  If he's the victim
22  yesterday, he might be able to sue.  But forget whether it comes
23  too late or whether it's unmanageable -- and that's one of the
24  complaints you made about it then to start with and which you
25  still make, is that this hodgepodge of claims is not manageable.

```
 1  And obviously, court management is something we're all interested
 2  in.  I am.
 3      But except for the manageability of a separate, stand-alone
 4  1981 claim in this case as an addendum, if you took it by itself,
 5  does it state a claim?
 6          MS. ANDERSON:  No, your Honor.
 7          THE COURT:  Why?
 8          MS. ANDERSON:  The reason it doesn't state a claim is
 9  because in order to state a 1981 claim, the plaintiff must allege
10  that he has been discriminated against because of race.
11      In this complaint -- and to be clear, there is a conclusory
12  recitation of a legal element in that regard.  The only facts,
13  however, that have been alleged that relate to the motivation for
14  any unfair treatment states that Mr. Edwards -- or that, more
15  importantly, other individuals were favored because the company
16  allegedly did not want to upset individuals who were there
17  illegally, which the plaintiff characterizes as cheap illegal
18  labor --
19          THE COURT:  Does he say what the adverse employment
20  action was other than that broad statement of somebody else got
21  favorable treatment?  I mean, you could get --
22          MS. ANDERSON:  I believe he alleges at one point that
23  he might have been denied participation in health benefits or
24  something based on shifts.  But the only facts that relate to his
25  1981 claim are that the company allegedly favored "cheap illegal
```

```
 1   labor."
 2        He then makes the leap to basically assert that all of the
 3   illegal labor are Hispanics or Latinos or, vice versa, that all
 4   Latinos are illegal.  That is the logic that's employed to try to
 5   repackage this, which was a former assault claim against Molina,
 6   as a 1981 claim.
 7        1981 doesn't protect status based on whether somebody is
 8   authorized or unauthorized to work or whether they are in the
 9   country illegally or in the country legally.  It only protects
10   discrimination or protects against discrimination based on race,
11   not based on cheap illegal labor status, as the plaintiff alleges
12   in his complaint.
13             THE COURT:  Mr. Frederick, tell me why all of your new
14   complaint should survive, if you think it should.  You filed a
15   response yesterday that I haven't read other than your opening
16   remarks, which I've already commented on.  But in particular, if
17   you want to, tell me why -- if you've ever seen or heard of a
18   RICO case based on an allegation of using illegal aliens in the
19   employment workplace other than this case.
20             MR. FREDERICK:  Barry Frederick for the plaintiffs,
21   Judge.
22        The Mohawk case from the Eleventh Circuit is my prime
23   example.  It factually is different from this one.  But it's a
24   prime example of a RICO claim based on employing illegal aliens,
25   Judge.
```

```
 1                THE COURT:  That's the Mohawk case?
 2                MR. FREDERICK:  Yes, sir.  It's cited in the brief at
 3   length by both sides.
 4                THE COURT:  Okay.
 5                MR. FREDERICK:  Judge, to be fair to defendants'
 6   counsel, they said they represent all defendants.  On page 2,
 7   footnote 1 of their motion, they disclaim representation of
 8   Mr. Molina.  They did not want to be committed --
 9                THE COURT:  I think I understood that they didn't
10   represent him.  He's already in default.
11                MR. FREDERICK:  They do not want to be associated with
12   him.
13                THE COURT:  I don't know if we ever get to trial on
14   this case how we would deal with Mr. Molina's default, whether
15   we'd sever it for the purpose of assessing damages for his
16   alleged assault.  I'm not sure.  We'll take one thing at a time.
17   We're not dealing with that at this time.
18        So do you agree that the only Rule 23 request has to do with
19   the RICO count?
20                MR. FREDERICK:  Yes, sir.
21                THE COURT:  And you would agree, then, that if the RICO
22   count went out, there would be no Rule 23 consideration?
23                MR. FREDERICK:  Yes.
24                THE COURT:  I'm not going to let that be a controlling
25   consideration.  And I'm not saying that I'm perfect.  I'm not
```

saying that I've never in my life allowed an extraneous or irrelevant matter influence my decision on something that is important. I'm not impervious to that. But I'm going to do my damndest to not let that stand in the way of my giving you what I think is the correct ruling on your entitlement to pursue your RICO claim.

And since you filed something that I haven't read and since they've had a chance to do what I really needed and can carve out what they concede, you may -- you have stated a claim. And so I know what their -- they're resisting strongly your RICO claim. And I understand that. And you say you're entitled to it.

I think that I'm, with my law clerk's help, in as good a position as I'm going to be without hearing further from you, though you've been here a long time, to deal with what I have.

If any of you want to say something more to me on either side, I'm going to listen briefly. But I think I'm -- after I read what you've got -- and if you want -- if the defendants want to respond to his response, I'm going to give you till next Friday to do it. And I'll -- by next Friday, I'll be back from lecturing on ERISA in Charleston, and I'll look at what you have if you file anything.

MS. ANDERSON: Thank you, your Honor.

MR. FREDERICK: Will it be reset, Judge, for hearing?

THE COURT: Probably not. If you see something surly enough that you want to respond to it, call my clerk and ask for

```
 1  it and we'll -- I may give you a chance for one more shot.
 2          MS. ANDERSON:  We will submit a rancor-free brief.
 3          THE COURT:  All right.
 4          MR. FREDERICK:  We can cut a deal to limit that, the
 5  rancor.
 6          THE COURT:  Just tone it down a little bit.  Thank you
 7  all.
 8          MR. FREDERICK:  I'm a redneck from south Alabama,
 9  Judge.  When I get it, I can't help resisting to give it back.  I
10  don't feel very professional in doing so.
11          THE COURT:  Y'all all are my friends.  I'll look at
12  your Mohawk case.
13      Huntley --
14          MR. FREDERICK:  Judge, can I say one more thing, since
15  this is my only chance to argue?
16          THE COURT:  Uh-huh.
17          MR. FREDERICK:  The defendants claim on a RICO claim,
18  you have to have more than mere employment.  I have pled more
19  than mere employment.  Defendants gave these illegal aliens cash.
20  You know, we -- I don't have evidence and have not pled they
21  provided housing or transportation or clothes.  They give him the
22  cash by which the illegal aliens can get housing and clothes and
23  their own transportation.  I don't see much difference between
24  directly doing it or indirectly --
25          THE COURT:  If you all want to respond to that in your
```

```
 1  next doing, go ahead.  I heard what he said.
 2          MS. ANDERSON:  Thank you, Judge.
 3          MR. FREDERICK:  I will add in the Court's prior
 4  opinion, U.S. v. Tipton from the Ninth Circuit --
 5          THE COURT:  Is that one of your things you've written?
 6          MR. FREDERICK:  No, sir, it isn't.
 7          THE COURT:  It's not?  Well, give it to me.
 8          MR. FREDERICK:  U.S. v. Tipton.  The top of page 14 of
 9  your prior opinion, you cited the Ninth Circuit case that noted
10  that, "Defendants gave money to the aliens to purchase
11  necessities."  Here, there was an elaborate scheme --
12          THE COURT:  Is this case from the Supreme Court?
13          MR. FREDERICK:  Ninth Circuit.
14          THE COURT:  Ninth Circuit.
15          MR. FREDERICK:  Which you cite, Judge.
16          THE COURT:  Oh.  All right.
17          MR. FREDERICK:  Thank your Honor.
18      (The proceedings were concluded.)
```

# C E R T I F I C A T E

     I hereby certify that the foregoing is a correct transcript of the proceedings had in the above-referenced cause.

Dated this 22nd day of April 2009.

*Sabrina Lewis*

SABRINA LEWIS, UNITED STATES COURT REPORTER